Appeal Nos. 2017-1118, -1202

# United States Court of Appeals

### *for the*

# Federal Circuit

ORACLE AMERICA, INC.,

*Plaintiff-Appellant,*

– v. –

GOOGLE INC.,

*Defendant-Cross-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 3:10-CV-03561-WHA
HONORABLE WILLIAM H. ALSUP

## BRIEF FOR *AMICUS CURIAE* NEW YORK INTELLECTUAL PROPERTY LAW ASSOCIATION IN SUPPORT OF NEITHER PARTY

ANNEMARIE HASSETT
*President-Elect, New York Intellectual
    Property Law Association*
CHARLES R. MACEDO
*Board Member and Representative,
    Amicus Briefs Committee, New York
    Intellectual Property Law Association*
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
(212) 336-8000

DANIEL J. BROOKS
*Principal Attorney*
SCAROLA MALONE & ZUBATOV LLP
1700 Broadway, 41st Floor
New York, New York 10019
(212) 757-0007

*Counsel for Amicus Curiae*

February 17, 2017

# CERTIFICATE OF INTEREST

Counsel for *amicus curiae* The New York Intellectual Property Law Association

certifies the following:

1.    The full names of every party or amicus represented by me are:

New York Intellectual Property Law Association.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Not applicable.

4.    The following are the names of all the law firms and attorneys expected to appear for The New York Intellectual Property Law Association in this Court:

Daniel J. Brooks of Scarola Malone & Zubatov LLP

Annemarie Hassett and Charles R. Macedo, of Amster, Rothstein & Ebenstein LLP.

Dated:      February 17, 2017      By:/s/ Daniel J. Brooks
*Attorney for Amicus Curiae New York*
*Intellectual Property Law Association*

i

# TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................1

SUMMARY OF ARGUMENT ..............................................................3

PROCEDURAL HISTORY ...................................................................5

ARGUMENT ........................................................................................7

I.    THE DISTRICT COURT'S HOLDING THAT A REASONABLE
JURY COULD HAVE FOUND A SIMPLE CHANGE IN CONTEXT
TO BE TRANSFORMATIVE,  IN THE ABSENCE OF ANY
ALTERATION OF THE ORIGINAL WORK OR ANY PURPOSE
DISTINCT FROM THE PURPOSE OF THE ORIGINAL, IS FLAWED
AND INCONSISTENT WITH APPLICABLE LAW ...................................7

    A.    Background on Transformativeness and Fair Use Analysis ................7

    B.    Transformativeness Requires More Than a Change in Context; It
Requires an Alteration to the Expressive Content or Message, or
to the Purpose of a Work ......................................................................9

        1.    Alteration of the Expressive Content or Message of a Work ...10

        2.    Change in Purpose of a Work ...................................................12

        3.    The Limited Role of Context .....................................................13

        4.    In Denying Oracle's Rule 50 Motions, the District Court
Departed from Applicable Precedents on Transformative
Use...............................................................................................16

II.    FINDING TRANSFORMATIVE USE BASED SOLELY UPON A
CHANGE OF CONTEXT WHERE THE ORIGINAL WORK HAS
NOT BEEN ALTERED OR USED FOR A TRANSFORMATIVE
PURPOSE IMPERILS THE COPYRIGHT HOLDERS'S EXCLUSIVE
RIGHT TO CREATE DERIVATIVE WORKS ...........................................17

CONCLUSION ...................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...............................................11, 16, 17

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015) .......................................................18, 19

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)...................................................................7, 8, 9

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998) ...............................................................18

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) ............................................................14

*Elvis Presley Enters., Inc. v. Passport Video*,
349 F.3d 622 (9th Cir. 2003), *overruled on other grounds by
Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th
Cir. 2011) .........................................................................................12

*Gaylord v. United States*,
595 F.3d 1364 (Fed. Cir. 2010) .........................................................11

*Infinity Broad. Corp. v. Kirkwood*,
150 F.3d 104 (2d Cir. 1998) ...............................................................10

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2002) .......................................................11, 16

*L.A. News Serv. v. CBS Broad., Inc.*,
305 F.3d 924 (9th Cir. 2002), *as amended* 313 F.3d 1093 (9th Cir.
2002) .................................................................................................11

*Mattel Inc. v. Walking Mountain Productions*,
353 F.3d 792 (9th Cir. 2003) ...............................................13, 14, 15

*Monge v. Maya Magazines, Inc.*,
688 F.3d 1164 (9th Cir. 2012) ............................................................10

*Oracle Am., Inc. v. Google Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014) ..................................................*passim*

*Oracle Am., Inc. v. Google Inc.*,
    872 F. Supp. 2d 974 (N.D. Cal. 2012) ..................................................5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ..................................................14, 15

*Ringgold v. Black Entm't Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997) ..................................................13

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ..................................................10, 13

*SOFA Entertainment, Inc. v. Dodger Productions, Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ..................................................12

*Stewart v. Abend*,
    495 U.S. 207 (1990)..................................................8

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016) ..................................................16

*UMG Recordings, Inc. v. MP3.com, Inc.*,
    92 F. Supp. 2d 349 (S.D.N.Y. 2000) ..................................................11

*Wall Data Inc. v. L.A. County Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006) ..................................................15

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) ..................................................13

## Statutes

17 U.S.C. § 101 ..................................................18

17 U.S.C. § 107..................................................8, 17

28 U.S.C. § 1295..................................................7

## Other Authorities

Fed. R. Civ. P. 50 ..................................................*passim*

Fed. R. App. P. 29.................................................................................................1

Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105
    (1990)...........................................................................................................9

U.S. Const. art. I, § 8, cl. 8................................................................................2

## STATEMENT OF INTEREST

The New York Intellectual Property Law Association ("NYIPLA" or "Association") respectfully submits this *amicus curiae* brief in support of neither party.[1]

The arguments set forth in this brief were approved on February 16, 2017, by an absolute majority of the officers and members of the Board of Directors of the NYIPLA, including any officers or directors who did not vote for any reason, including recusal, but do not necessarily reflect the views of a majority of the members of the Association, or of the law or corporate firms with which those members are associated.  After reasonable investigation, the NYIPLA believes that no officer or director or member of the Committee on *Amicus* Briefs who voted in favor of filing this brief, nor any attorney associated with any such officer, director or committee member in any law or corporate firm, represents a party to this litigation.  Some officers, directors, committee members or associated attorneys may represent entities, including other *amici curiae*, which have an interest in other matters that may be affected by the outcome of this litigation.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than the *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.  Pursuant to Federal Rule of Appellate Procedure 29(a), all parties have consented to the filing of this brief.

The NYIPLA is a professional association of over 1,100 attorneys whose interests and practices lie in the areas of patent, trademark, copyright, trade secret and other intellectual property law.  The Association's members include a diverse array of attorneys specializing in copyright law, from in-house counsel for businesses that own, enforce, and challenge copyrights, to attorneys in private practice who represent parties, both copyright owners and accused infringers, in proceedings before the courts and other tribunals that adjudicate copyright claims or set copyright royalty rates.  The NYIPLA's members participate actively in copyright litigation and frequently engage in copyright licensing matters, representing both copyright licensors and licensees.

The NYIPLA's members and their respective clients have a strong interest in insuring that fair use is applied consistently, predictably and in a way that safeguards the derivative works right that is intrinsic to "the Progress of Science and useful Arts."  U.S. Const. art. I, § 8, cl. 8.  Without taking a position on the ultimate disposition of this appeal, the Association urges this Court to reject the district court's rationale for holding that a reasonable jury could have found transformative use under the first fair use factor in this case.  Specifically, the district court ruled that a change in "context" alone, namely, from use in desktop and laptop computers to use in smartphones and tablets, could be considered a transformative use, altering the original computer source code with new

2

expression, meaning or message, and weighing in favor of fair use. This ruling is

inconsistent with governing law on what constitutes a transformative use, and, if

widely adopted, could erode the copyright holder's exclusive right to create

derivative works.

## SUMMARY OF ARGUMENT

This case has been the subject of a prior trip to this Court to address

important issues on the law of Copyright.[2]  In this round, the Court is being asked

to set parameters for the scope of the fair use defense in copyright law, including

what constitutes a "transformative use" of computer programming code,

specifically, the use by Defendant-Cross-Appellant Google, Inc. ("Google") of

packages of Java computer source code owned by Plaintiff-Appellant Oracle

America, Inc. ("Oracle").

In denying Oracle's Rule 50 motions, made at the close of Google's case in

chief and renewed after the trial, the district court ruled, in connection with the first

prong of the first fair use factor (the purpose and character of the use), that the jury

reasonably could have concluded that Google's use, in the Android mobile

operating system, of Oracle's packages of Java computer source code, without

---

[2] In the prior appeal, this Court found, *inter alia*, that the computer code in question was copyrightable. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1381 (Fed. Cir. 2014). The NYIPLA offers no views on that question, and for the purpose of this brief, assumes that the copyrightability of the relevant computer code is no longer at issue on this appeal.

alteration of their content and for the same purpose as in the Java system, was

transformative (Dkt. No. 1988, at 14).  This was because, the court found,

Google's use occurred in a different "context"; *viz.* in smartphones and tablets

rather than in the desktop or laptop computers for which Java supposedly was

designed.  *Id.*  This change in media, the court reasoned, coupled with the addition

of new implementing code and a new mobile smartphone platform, could be

considered to have given "new expression, meaning, or message to the duplicated

code," sufficient to render the new work transformative.  *Id.*

The Association takes no position on whether there could conceivably be

some rationale for finding that the use in question could reasonably be considered

transformative, and takes no position on the ultimate question of fair use.  The

Association respectfully submits, however, that the district court's proffered

rationale for finding that Google's use could reasonably be viewed as

transformative is flawed and contrary to applicable law.  Moreover, it blurs the line

between infringing derivative works and transformative fair uses in a way that

could unduly restrict the scope of copyright protection that the Copyright Act

affords to authors.

## PROCEDURAL HISTORY

In 2010, Oracle sued Google in the United States District Court for the Northern District of California for patent and copyright infringement arising from Google's unauthorized use of Oracle's Java application programming interfaces ("API packages") in its Android technology.  A jury found no patent infringement, but found Google liable for copyright infringement, and deadlocked on Google's fair use defense to the copyright claims.  *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1347 (Fed. Cir. 2014).  After the verdict, the district court found that the replicated API packages were not copyrightable as a matter of law and dismissed the copyright claims pertaining to those packages.  *See Oracle Am., Inc. v. Google Inc.*, 872 F. Supp. 2d 974 (N.D. Cal. 2012).  Oracle appealed the dismissal of its copyright claims to this Court, which held that the declaring code and the structure, sequence, and organization ("SSO") of the Java API packages were entitled to copyright protection and that the verdict of copyright infringement should be reinstated.  *Oracle*, 750 F.3d at 1381.  The case was remanded for another jury trial on Google's fair use defense.  *Id*.

At the second jury trial, Google prevailed on fair use, in a verdict rendered on May 26, 2016 (Dkt. Nos. 1982 (Special Verdict Form), 1984 (Minute Entry)). The verdict did not make any specific findings as to any of the four fair use factors (Dkt. No. 1982).  On May 17, 2016, at the close of Google's case in chief, Oracle

had moved for judgment as a matter of law pursuant to Rule 50(a), Fed. R. Civ. P.
(Dkt. No. 1914).  After the trial, Oracle moved for judgment as a matter of law
pursuant to Rule 50(b), Fed. R. Civ. P., renewing its prior motion for judgment as a
matter of law pursuant to Rule 50(a) (Dkt. No. 1997).  On June 8, 2016, the district
court issued a written order denying Oracle's Rule 50(a) motion (Dkt. No. 1988).
On September 27, 2016, the district court denied Oracle's Rule 50(b) motion,
stating, "Oracle's new Rule 50 motion is denied for the same reasons as its old one
(Dkt. No. 1988)."  (Dkt. No. 2070, at 2).

In denying Oracle's Rule 50 motions for judgment as a matter of law, the
district court concluded that a reasonable jury could have found in favor of Google
on each of the four fair use factors.  With respect to the first fair use factor, which
covers transformativeness as part of the "purpose and character" prong, the court
held that the jury could reasonably have found that Google's selection of some, but
not all of Oracle's Java API packages, "with new implementing code adapted to
the constrained operating environment of mobile smartphone devices," together
with new "methods, classes, and packages written by Google for the mobile
smartphone platform," constituted "a fresh context giving new expression,
meaning, or message to the duplicated code" because the "copyrighted works were
designed and used for desktop and laptop computers."  (Dkt. No. 1988, at 14).  The
court reached this conclusion despite recognizing that Oracle's code had been

6

copied by Google without alteration and for an identical purpose. *Id*.  This appeal

followed.

This Court has exclusive jurisdiction over all appeals in actions involving

patent claims, 28 U.S.C. § 1295, even where, as here, an appeal raises only non-

patent issues.  Because, however, copyright law is not exclusively assigned to the

Federal Circuit, this Court therefore applies copyright law and precedents which

would be applied by the regional circuit; here, the Ninth Circuit.  *See Oracle*, 750

F.3d at 1353.

## ARGUMENT

## I.    THE DISTRICT COURT'S HOLDING THAT A REASONABLE JURY COULD HAVE FOUND A SIMPLE CHANGE IN CONTEXT TO BE TRANSFORMATIVE,  IN THE ABSENCE OF ANY ALTERATION OF THE ORIGINAL WORK OR ANY PURPOSE DISTINCT FROM THE PURPOSE OF THE ORIGINAL, IS FLAWED  AND INCONSISTENT WITH APPLICABLE LAW

### A.    Background on Transformativeness and Fair Use Analysis

The goal of incentivizing creativity and innovation by giving copyright

holders exclusive rights to their works has long co-existed with the recognition

that, "[i]n truth, in literature, in science and in art, there are, and can be few, if any,

things, which in an abstract sense, are strictly new and original throughout.  Every

book in literature, science and art, borrows, and must necessarily borrow, and use

much which was well known and used before."  *Campbell v. Acuff-Rose Music,*

*Inc.*, 510 U.S. 569, 575 (1994) (citation omitted).  The fair use doctrine, a judge-

made rule developed to accommodate the tension between protecting creators of

intellectual property and allowing others to express themselves by reference to

copyrighted works (*i.e.,* allowing them to copy those works without permission),

"permits courts to avoid rigid application of the copyright statute when, on

occasion, it would stifle the very creativity which that law is designed to foster."

*Stewart v. Abend*, 495 U.S. 207, 236 (1990).

The common law fair use doctrine was codified in the Copyright Act of

1976, to provide for the consideration of four non-exclusive statutory factors: "(1)

the purpose and character of the use, including whether such use is of a

commercial nature or is for nonprofit educational purposes; (2) the nature of the

copyrighted work; (3) the amount and substantiality of the portion used in relation

to the copyrighted work as a whole; and (4) the effect of the use upon the potential

market for or value of the copyrighted work."  17 U.S.C. § 107.

The Supreme Court provided guidance on the "purpose and character" prong

of the first fair use factor in 1994, stating that the

> central purpose of this investigation is to see, in Justice Story's words,
> whether the new work merely "supersede[s] the objects" of the original
> creation . . . or instead adds something new, with a further purpose or
> different character, altering the first with new expression, meaning, or
> message; it asks, in other words, whether and to what extent the new
> work is "transformative."

*Campbell*, 510 U.S. at 579.

8

In introducing the concept of transformativeness in *Campbell*, the Supreme Court cited to, and borrowed the reasoning of, an article by then-District Judge Leval, who, in 1990, wrote that the first fair use factor "raises the question of justification[,]" which, in turn, depends "primarily on whether, and to what extent, the challenged use is transformative."  Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111 (1990).[3]

The Supreme Court emphasized the importance of the transformative use standard, stating, "Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works.  Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright."  *Campbell*, 510 U.S. at 579.

## B.    Transformativeness Requires More Than a Change in Context; It Requires an Alteration to the Expressive Content or Message, or to the Purpose of a Work

In order to qualify as a transformative use under the Ninth Circuit's jurisprudence, a secondary work must either alter the expressive content or

---

[3] Judge Leval elaborated on transformativeness, stating, "[t]he use must be productive and must employ the quoted matter in a different manner or for a different purpose from the original.  A quotation of copyrighted material that merely repackages or republishes the original is unlikely to pass the test; in Justice Story's words, it would merely 'supersede the objects' of the original."  Leval, 103 Harv. L. Rev. at 1111 (citation omitted).

message of the original work, or serve a transformative purpose distinct from the purpose of the original work. *Oracle*, 750 F.3d at 1374 (citing cases).

### 1.    Alteration of the Expressive Content or Message of a Work

In *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013), the Court of Appeals for the Ninth Circuit held that, even where the allegedly infringing work "makes few physical changes to the original or fails to comment on the original," it will typically be found to be transformative "as long as new expressive content or message is apparent." *Id*. at 1177.  Conversely, "[i]n the typical 'non-transformative' case, the use is one which makes no alteration to the *expressive content or message* of the original work." *Id*. (Emphasis in the original).

One of the cases cited by *Seltzer* was *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012), in which a magazine's publication of copyrighted wedding photos in order to expose a couple's clandestine wedding was held not to be transformative because the magazine "left the inherent character of the images unchanged." *Id*. at 1176.  In holding that the use of the photos was not transformative, the *Monge* Court quoted from a Second Circuit decision, *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998), where the retransmission of radio broadcasts over telephone lines was not transformative because, despite the different medium, it did not "alter[] the first [work] with new expression, meaning or message." *Monge*, 688 F.3d at 1176 (second alteration in

10

original).  *See also Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 & n.19 (9th Cir.

2002) ("Courts have been reluctant to find fair use when an original work is merely

retransmitted in a different medium") (citing *Infinity* and *UMG Recordings, Inc. v.*

*MP3.com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000), where it was found that

reproduction of audio compact disks, without alteration of the expressive content,

into computer MP3 format did not transform the works); *accord: L.A. News Serv.*

*v. CBS Broad., Inc.*, 305 F.3d 924, 938 (9th Cir. 2002) ("Merely plucking the most

visually arresting excerpt from . . . nine minutes of footage cannot be said to have

added anything new."), *as amended* 313 F.3d 1093 (9th Cir. 2002); *A&M Records,*

*Inc. v. Napster, Inc.*, 239 F.3d 1004, 1011, 1015 (9th Cir. 2001) (copying an audio

compact disk directly onto a computer's hard drive by compressing the audio

information on the CD into the MP3 format was not transformative).

This Court, where it was not applying Ninth Circuit precedents, has similarly

concluded that a transformative use requires either a transformative purpose or

alteration of the expressive content or meaning of the original work.  In *Gaylord v.*

*United States*, 595 F.3d 1364, 1373-74 (Fed. Cir. 2010), the Court found that a

postage stamp of the Korean War Veterans Memorial had the same purpose as the

Memorial: "to honor veterans of the Korean War," and that there was no

transformative use where the stamp surrealistically captured the Korean War

Veterans Memorial on a cold morning after a snowstorm, without, however,

11

transforming the Memorial's "character, meaning, or message. Nature's decision to snow cannot deprive [plaintiff] of an otherwise valid right to exclude."

## 2.    Change in Purpose of a Work

As this Court stated on the previous appeal in this case, "Courts have described new works as 'transformative' when 'the works use copyrighted material for purposes distinct from the purpose of the original material.'" *Oracle*, 750 F.3d at 1374 (quoting *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003), *overruled on other grounds by Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011)). In *Elvis Presley*, certain uses of television clips of the singer were transformative because they were "cited as historical reference points in the life of a remarkable entertainer[,]" which transformed "the purpose of showing these clips from pure entertainment to telling part of the story of Elvis." *Id.* On the other hand, the use of many of the film clips lacked any transformative purpose because they seemed to have been "used in excess of this benign purpose, and instead are simply rebroadcast for entertainment purposes . . . ." *Id.*

The Ninth Circuit examined the issue of purpose more recently in *SOFA Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013). There, the Court found that the use of a clip of Ed Sullivan's introduction of the Four Seasons on his show had a transformative purpose when it was used as

12

a biographical anchor for the band's history, not for its entertainment value, in a

musical about the band (*Jersey Boys)*.  By way of contrast, a secondary use which

does not alter the expressive content or message of the original work is not

transformative if it lacks a distinct purpose.  *See Worldwide Church of God v.*

*Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) ("Although

'transformative use is not absolutely necessary for a finding of fair use,' where the

'use is for the same intrinsic purpose as [the copyright holder's] . . . such use

seriously weakens a claimed fair use.'") (internal citations omitted).  *See also*

*Seltzer*, 725 F.3d at 1177, citing as an example of a non-transformative use a

Second Circuit case, *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 79 (2d

Cir. 1997) ("use of a poster as decoration on a TV show not transformative because

it was used for 'precisely a central purpose for which it was created' and

defendants had done nothing with the poster to add anything new") (internal

citation omitted).

### 3.    The Limited Role of Context

Some Ninth Circuit cases describe a transformative purpose as creating a

new or different context.  For example, in *Mattel Inc. v. Walking Mountain*

*Productions*, 353 F.3d 792, 802-03 (9th Cir. 2003), photographs of the iconic

Barbie doll in nude, apparently dangerous, and sometimes sexualized poses with

large kitchen appliances provided a "different context" in which the assiduously-

13

marketed, idealized vision of Barbie as a symbol of American girlhood was clearly being parodied.  This use of an original work for social criticism and parodic speech is a quintessential example of a transformative purpose.  *Id*.  Without that transformative purpose, however, the mere use of Barbie in a new context would not have weighed in favor of fair use.  *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1401 (9th Cir. 1997) (use of the characteristic rhyming style of Dr. Seuss' *The Cat in the Hat* and the Cat's distinctive stove-pipe hat in the different context of recounting the story of the O.J. Simpson double murder trial was not parodic or transformative because it did not hold Dr. Seuss' style up to ridicule).

Likewise, in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), Google's use of thumbnail versions of copyrighted images was highly transformative because, while an image may have been created originally to serve an entertainment, aesthetic, or informative function, Google's Internet "search engine transforms the image into a pointer directing a user to a source of information."  *Id*. at 1165.  This entirely new use of images as "an electronic reference tool" was transformative; "even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work."  *Id*.  The Court further stated, "In other words, a search engine puts images 'in a different context' so that they are 'transformed into a new creation.'"  *Id*.

14

(quoting *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)).[4]

As in *Mattel* and *Wall Data*, the change in context in *Perfect 10* was not the determinative factor; rather, reference was made to the change in context precisely because that change enabled the change in purpose, which was determinative. This was made clear by the *Perfect 10* Court, which summarized: "Here, Google uses Perfect 10's images in a new context to serve a *different purpose*." *Perfect 10*, 508 F.3d at 1165 (emphasis supplied). It follows that, in this case, the jury could only have reasonably found Google's verbatim use of Oracle's computer code to be transformative if it was used for a purpose distinct from the purpose for which it was used in Oracle's Java technology. A mere change in "context" from desktop and laptop computers to smartphones and tablets, while involving new media and implementing code, would not satisfy the requirement, under Ninth Circuit

---

[4] The language quoted from *Wall Data* states, in full, "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." 447 F.3d at 778. In that case, however, the use was not transformative; as the Court noted, "The Sheriff's Department created exact copies of [plaintiff's] software. It then put those copies to the identical purpose as the original software. Such a use cannot be considered transformative." *Id*.

15

precedents, that a use which does not change the expressive content of the original work is transformative only if it has a transformative purpose.[5]

### 4. In Denying Oracle's Rule 50 Motions, the District Court Departed from Applicable Precedents on Transformative Use

To be transformative, a secondary work must either alter the original work with new expression, meaning or message or serve a transformative purpose distinct from the purpose of the original work. *Oracle*, 750 F.3d at 1374. Here, the district court's ruling recognized that Google's Android mobile operating system did not alter the Oracle computer code that it appropriated and employed that code for the identical purpose for which it was used in Oracle's Java technology. While there was a change in media and the addition of corresponding implementing technology, "Courts have been reluctant to find fair use when an original work is merely retransmitted in a different medium." *Kelly*, 336 F.3d at 819 & n.19; *A&M Records*, 239 F.3d at 1015.

---

[5] Even a stark change in context, standing alone, does not render a secondary work transformative. A recent decision of the Second Circuit, which, as seen above, analyzes transformativeness in the same way as the Ninth Circuit, is illustrative. In *TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016), the Court rejected a fair use claim even though the copyrighted material (the iconic Abbott and Costello comedy routine, *Who's on First?*) was used in the "sharply different context" of a Broadway play, a dark comedy about an introverted student in a religious small town. 839 F.3d at 175, 182. As the Court stated, "The Play may convey a dark critique of society, but it does not transform Abbott and Costello's Routine so that <u>it</u> conveys that message. To the contrary, it appears that the Play specifically has its characters perform *Who's on First?* without alteration [so that it would be recognizable]." *Id.* at 181 (emphasis in original).

16

Despite acknowledging that Oracle's computer code was unaltered and was used by Google for an identical function and purpose (Dkt. No. 1988, at 14), the district court nevertheless found that a reasonable jury could have found Google's use to be transformative.  *Id*.  This ruling departed from applicable law in the Ninth Circuit.

The district court seemed to recognize as much in the Pre-Instruction on Fair Use that it issued on May 5, 2016 (Dkt. No. 1828).  As the court proposed to instruct the jury, "A work is not transformative where the user makes little or no alteration to the expressive content or message of the original work and uses it in the same or similar context."  (Dkt. No. 1828, at 3).  The district court later rescinded this proposed instruction *sua sponte*, replacing it with an incomplete charge that, "you may not disqualify [Google's use] from being transformative merely because the declaring code and SSO were carried over without change." (Dkt. No. 1950, at 13).   The Association respectfully submits that the district court had it right the first time.

## II.     FINDING TRANSFORMATIVE USE BASED SOLELY UPON A CHANGE OF CONTEXT WHERE THE ORIGINAL WORK HAS NOT BEEN ALTERED OR USED FOR A TRANSFORMATIVE PURPOSE IMPERILS THE COPYRIGHT HOLDERS'S EXCLUSIVE RIGHT TO CREATE DERIVATIVE WORKS

Fair use, as codified in Section 107 of the Copyright Act, does not employ the word "transformative."  In contrast to the statutory fair use provision, the

statutory definition of a derivative work expressly speaks of an original work being "transformed."  Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted."

As the lower federal courts began to apply *Campbell*'s transformative use standard, the potential tension between the first fair use factor's emphasis on transformativeness and the copyright owner's exclusive right to create or license others to create transformative derivative works came into focus.  *See Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 143 (2d Cir. 1998) (noting "potential source of confusion in our copyright jurisprudence over the use of the term 'transformative'" but asserting that "[a]lthough derivative works that are subject to the author's copyright transform an original work into a new mode of presentation, such works – unlike works of fair use – take expression for purposes that are not 'transformative'").

Judge Leval, who coined the use of the term "transformative" in fair use jurisprudence, addressed this interplay between first factor transformativeness and the right to create derivative works, which, by definition, transform a preexisting work, in *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015).  Writing for

18

the Second Circuit, Judge Leval explained, "The statutory definition suggests that

derivative works generally involve transformations in the nature of *changes of

form*."  804 F.3d at 215 (citing 17 U.S.C. § 101) (emphasis in original).  Derivative

works "ordinarily are those that re-present the protected aspects of the original

work, *i.e.*, its expressive content, converted into an altered form, such as the

conversion of a novel into a film, the translation of a writing into a different

language . . . or other similar conversions."  *Id.* at 225 (internal citation omitted).

"By contrast, copying from an original for the purpose of criticism or commentary

on the original or provision of information about it, tends more clearly to satisfy

*Campbell*'s notion of the 'transformative' purpose involved in the analysis of

Factor One."  *Id.* at 215-16.

　　　Applying this distinction, if Google engaged in exact copying of the Java

declaring code and SSO of the API packages, without altering their expressive

content or message, and in order to use them in the Android for the identical

purpose they serve in Java, but used them in the different context of smartphones

or tablets instead of desktops or laptops, this would appear to be a change in form,

the hallmark of a derivative work, rather than a fair use, which alters the original

for a transformative purpose.  Whether characterized as a change in form, medium,

or context, Judge Leval's statutory interpretation would appear to indicate that, if

Google used Oracle's computer code without alteration and for an identical

19

purpose, that use was derivative rather than transformative, and therefore required the permission of the copyright owner.

To hold otherwise would blur the line between permissible transformative fair uses and infringing derivative works and could result in the impairment of the derivative works right.

## CONCLUSION

For the foregoing reasons, the NYIPLA respectfully requests this Court to clarify the boundaries of the transformative use standard by confirming that a mere change of context, standing alone, cannot, under the first fair use factor, be deemed to be transformative.

February 17, 2017

Respectfully submitted,

Annemarie Hassett
*President-Elect, New York Intellectual Property Law Association*
Charles R. Macedo
*Board Member and Representative, Amicus Briefs Committee, New York Intellectual Property Law Association*
AMSTER, ROTHSTEIN & EBENSTEIN, LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000
ahassett@arelaw.com
cmacedo@arelaw.com

/s/ Daniel J. Brooks
Daniel J. Brooks
*Principal Attorney*
SCAROLA MALONE & ZUBATOV LLP
1700 Broadway, 41st Floor
New York, NY 10019
(212) 757-0007
dbrooks@smzllp.com

*Counsel for Amicus Curiae New York Intellectual Property Law Association*

<u>CERTIFICATE OF FILING AND SERVICE</u>

I, Robyn Cocho, hereby certify pursuant to Fed. R. App. P. 25(d) that, on February

17, 2017 the foregoing Brief for Amicus Curiae New York Intellectual Property

Law Association in Support of Neither Party was filed through the CM/ECF

system and served electronically on parties in the case

<u>/s/ Robyn Cocho</u>
Robyn Cocho

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

__x__ The brief contains 4,834 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

__x__ The brief has been prepared in a proportionally spaced typeface using MS Word 2015 in a 14 point Times New Roman font or

_____ The brief has been prepared in a monospaced typeface using MS Word 2002 in a ___ characters per inch_____ font.


/s/ Daniel J. Brooks
Daniel J. Brooks