No. 17-1118, 17-1202

IN THE
United States Court of Appeals
FOR THE FEDERAL CIRCUIT

ORACLE AMERICA, INC.,

*Appellant,*

v.

GOOGLE, INC.,

*Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA,
CASE NO. CV 10-03561
JUDGE WILLIAM ALSUP

BRIEF OF *AMICI CURIAE* THE MOTION PICTURE ASSOCIATION OF
AMERICA, INC. ("MPAA"), INDEPENDENT FILM & TELEVISION
ALLIANCE ("IFTA"), AND SCREEN ACTORS GUILD – AMERICAN
FEDERATION OF TELEVISION AND RADIO ARTISTS ("SAG-AFTRA")
IN SUPPORT OF APPELLANT

| | |
|---|---|
| MITCHELL SILBERBERG & KNUPP LLP | SCREEN ACTORS GUILD – AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS |
| ROBERT H. ROTSTEIN<br>11377 West Olympic Boulevard<br>Los Angeles, California 90064<br>Telephone: (310) 312-2000 | DUNCAN W. CRABTREE-IRELAND<br>5757 Wilshire Blvd., 7th Fl.<br>Los Angeles, CA 90036<br>Telephone: (323) 549-6627 |
| J. MATTHEW WILLIAMS<br>1818 N Street, N.W., 8th Floor<br>Washington, D.C. 20036<br>Telephone: (202) 355-7900 | Attorney for SAG-AFTRA |
| Attorneys for MPAA and IFTA | |

FORM 9. Certificate of Interest                                                                 Form 9
                                                                                             Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Oracle America, Inc.     v.     Google Inc.

Case No.   17-1118, 17-1202

## CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☒ (name of party)

Motion Picture Association of America, Inc. (MPAA), and Independent Film & Television Alliance (IFTA)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Motion Picture Association of America, Inc. | Motion Picture Association of America, Inc. | None |
| Independent Film & Television Alliance | Independent Film & Television Alliance | None |
| | | |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Robert H. Rotstein, and J. Matthew Williams
of Mitchell Silberberg & Knupp LLP

February 17, 2017                                /s/ Robert H. Rotstein
Date                                              Signature of counsel

Please Note: All questions must be answered     Robert H. Rotstein
                                                 Printed name of counsel

cc:

Reset Fields

i

FORM 9. Certificate of Interest

Form 9
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Oracle America, Inc. v. Google Inc.

Case No. 17-1118, 17-1202

## CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☒ (name of party)

Screen Actors Guild-American Federation of Television and Radio Artists (SAG-AFTRA)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Screen Actors Guild-American Federation of Television and Radio Artists | Screen Actors Guild-American Federation of Television and Radio Artists | None |
| | | |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Duncan W. Crabtree-Ireland

February 17, 2017
Date

/s/ Duncan W. Crabtree-Ireland
Signature of counsel

Please Note: All questions must be answered

Duncan W. Crabtree-Ireland
Printed name of counsel

cc:

Reset Fields

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST (MPAA/IFTA) .................................................................. i

CERTIFICATE OF INTEREST (SAG-AFTRA) ................................................................ ii

INTERESTS OF *AMICI CURIAE* ................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 4

ARGUMENT .................................................................................................................. 6

In Assessing The Fourth Fair Use Factor, The District Court Incorrectly Focused Exclusively On Google's Specific Uses Rather Than On Oracle's Potential Markets. .................................................................................. 6

CONCLUSION .............................................................................................................. 9

# TABLE OF AUTHORITIES

### CASES

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) .................................................................. 6

*Am. Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994) .................................................................. 3, 5

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ................................................................... 1

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
   902 F.2d 829 (11th Cir. 1990) ................................................................. 8

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ............................................................................ 4, 5

*Golan v. Holder*,
   132 S. Ct. 873 (2012) .............................................................................. 8

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ................................................................................ 4

*Leibovitz v. Paramount Pictures Corp.*,
   137 F.3d 109 (2d Cir. 1998) ................................................................... 1

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1116 (9th Cir. 2012) ................................................................. 7

*Oracle Am., Inc. v. Google Inc.*,
   2016 U.S. Dist. LEXIS 145601 (N.D. Cal. Sept. 27, 2016) ................. 3, 7

*Oracle Am., Inc. v. Google Inc.*,
   2016 U.S. Dist. LEXIS 74931 (N.D. Cal. June 8, 2016) .......................... 3

*Sofa Entm't, Inc. v. Dodger Prods.*,
   709 F.3d 1273 (9th Cir. 2013) ................................................................. 5

*TCA TV Corp. v. McCollum*,
   839 F.3d 168 (2d Cir. 2016) ................................................................... 5

# TABLE OF AUTHORITIES
*(Continued)*

**Page(s)**

**STATUTES**

17 U.S.C.
 §107 ............................................................................................... 3, 5, 7, 8
 §107(4) ................................................................................................... 6

Fed. Cir. R.
 Rule 29(c) ............................................................................................... 1

Fed. R. App. P.
 Rule 29(a) ............................................................................................... 1

Fed. R. Civ. Proc.
 Rule 50 ................................................................................................... 3
 Rule 59 ................................................................................................ 3, 6

**OTHER AUTHORITIES**

Complete list of IFTA Members http://www.ifta-online.org ......................... 2

4 M.B. Nimmer & D. Nimmer, § 13.05[A][4] (1984) .................................... 4

Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV.
 1105, 1111 (1990) .................................................................................. 8

## INTERESTS OF *AMICI CURIAE*[1]

The Motion Picture Association of America, Inc. ("MPAA") is a not-for-profit trade association founded in 1922 to address issues of concern to the motion picture industry. MPAA member companies include Paramount Pictures Corp., Sony Pictures Entertainment Inc., Twentieth Century Fox Film Corp., Universal City Studios LLC, Walt Disney Studios Motion Pictures, and Warner Bros. Entertainment Inc. These companies and their affiliates are the leading producers and distributors of filmed entertainment in the theatrical, television, and home-entertainment markets.

MPAA's members depend upon effective copyright laws to protect the films, television shows, and new media content that they invest in, create, and disseminate. MPAA members both enforce their copyrights and regularly rely on the fair use defense in producing and distributing their expressive works. Thus, MPAA members understand the value of the fair use defense, as it has been developed by courts in this country, in protecting the free speech interests of filmmakers and their distributors. *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692-94 (7th Cir. 2012) (spoof of viral, Internet video in episode of animated television series "South Park" was fair use); *Leibovitz v.*

---

[1] The parties have consented to the filing of this brief pursuant to Fed. R. App. P. 29(a) and Fed. Cir. R. 29(c). No party's counsel authored any part of this brief. No person other than MPAA contributed money intended to fund the preparation of this brief.

1

*Paramount Pictures Corp.*, 137 F.3d 109, 112-17 (2d Cir. 1998) (advertising poster for movie "Naked Gun 33 1/3" containing parody of photograph was fair use). Accordingly, the MPAA is well positioned to provide the Court with a unique and balanced perspective on the proper contours of the fair use defense.

Founded in 1980, the Independent Film & Television Alliance ("IFTA") is the non-profit trade association for the worldwide independent motion picture and television industry. Representing more than 125 companies in 23 countries, IFTA's member companies are the foremost independent production and distribution companies, sales agents and financial institutions that provide funding for independent production.[2] As the voice and advocate for the independents, IFTA regularly provides input to governments on a wide range of copyright, trademark, financing and export issues that directly affect the independent film and television industry. Copyright is the core foundation of the motion picture and television industry. IFTA members have a strong interest in and rely heavily on the legal framework provided by copyright law to produce, protect, distribute, and license their creative works which in turn provide investment for future productions. Similarly, as creators of films and television programming, IFTA members understand the value of a properly applied fair use doctrine in the production of audio visual works.

---

[2] A complete list of IFTA members is available online at: http://www.ifta-online.org.

2

Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") is the nation's largest labor union representing working media artists. With a membership comprising over 160,000 media professionals including actors, announcers, journalists, television and radio personalities, recording artists, singers, dancers, stunt performers and others, SAG-AFTRA's members are the faces and voices that entertain and inform America and the world. SAG-AFTRA exists to secure strong protections for media artists throughout the world – including protections against unauthorized use of their work – through the negotiation of wages, working conditions, and health and pension benefits; the preservation and expansion of its members' work opportunities; the vigorous enforcement of entertainment industry contracts; and advocacy at the international, federal, state, and local levels.

SAG-AFTRA has collective bargaining agreements with the major motion picture and television production companies that govern the wages, hours, and working conditions of its members. SAG-AFTRA's members, and its pension and health plans, rely on residuals – deferred compensation based on the continuing use of the creative works on which they were employed – as an important source of income. SAG-AFTRA, therefore, has an interest in ensuring that the fair use defense is properly applied so as not to erode the protections afforded to copyrighted content.

## SUMMARY OF ARGUMENT

In evaluating the fourth fair use factor under 17 U.S.C. §107, a court must consider "the effect of the [defendant's use of the copyrighted work] upon the potential market for or value of the copyrighted work." In undertaking this inquiry, a court should assess harm to "traditional, reasonable, or likely to be developed markets." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994).

Contrary to this well-established law, the district court focused only on *existing* markets for Oracle's software in denying appellant Oracle America, Inc.'s Federal Rule of Civil Procedure Rule 50 motion for judgment as a matter of law and Rule 59 motion for a new trial. *Oracle Am., Inc. v. Google Inc.*, 2016 U.S. Dist. LEXIS 74931, at *37-41 (N.D. Cal. June 8, 2016) (order denying motion for judgment as a matter of law); *Oracle Am., Inc. v. Google Inc.*, 2016 U.S. Dist. LEXIS 145601, at *13-16 (N.D. Cal. Sept. 27, 2016) (order denying renewed motion for judgment as a matter of law and motion for a new trial). The court did not assess the harm to Oracle's *potential* markets—in other words, Oracle's reasonable or likely to be developed licensing markets—which include the television, automobile, and wearable-device markets.

The district court's failure to consider these markets (or to allow the jury to consider them) arose out of a conflation of infringement analysis and fair use analysis. The court as an evidentiary matter excluded from trial the question

4

whether Google's post-lawsuit entry into the television, automobile, and wearable-device markets constituted copyright infringement. However, the court then erroneously leveraged that ruling to exclude those markets from its assessment of whether Google's uses of Oracle software in tablets and smart phones—the uses that *were* part of the trial—constituted fair use.[3]

The district court's approach on this issue is contrary to controlling Supreme Court authority. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (quoting 4 M.B. Nimmer & D. Nimmer, § 13.05[A][4] (1984)) (The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original."); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985) ("This inquiry must take account not only of harm to the original but also of harm to the market for derivative works."). In light of the district court's misapplication of the law, *Amici* request that this Court apply the proper assessment of the fourth fair use factor, or alternatively, remand so that the district court may do so.

---

[3] Indeed, the district court not only excluded evidence of potential markets Oracle could enter, but ignored markets Oracle had already entered, including for televisions and cars.

5

## ARGUMENT

### In Assessing The Fourth Fair Use Factor, The District Court Incorrectly Focused Exclusively On Google's Specific Uses Rather Than On Oracle's Potential Markets.

In evaluating a defense of fair use, a court will consider "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107; *see Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1278 (9th Cir. 2013). The Supreme Court has cautioned against undue reliance on a single fair use factor. *Campbell*, 510 U.S. at 578 ("Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright.").

The inquiry under the fourth factor cannot be limited solely to whether the defendant's challenged use harms the market within which the plaintiff is already operating. Rather, courts must also consider potential harm to the plaintiff's "derivative" or "licensing" markets (*i.e.*, markets the plaintiff might later enter or license others to enter). *See Sofa Entm't*, 709 F.3d at 1280 ("The fourth factor requires courts to consider the secondary use's impact on the market for the original work and the market for derivative works ..."); *TCA TV Corp. v. McCollum*, 839 F.3d 168, 186 (2d Cir. 2016) (quoting *Am. Geophysical*, 60 F.3d at

6

930; citations omitted) ("To be clear, in assessing harm posed to a licensing market, a court's focus is not on possible lost licensing fees from defendants' challenged use. ... Rather, a court properly considers the challenged use's 'impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets.'"). Significantly, the focus is on the potential market that the *plaintiff* is likely to develop. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001) ("[L]ack of harm to an established market cannot deprive *the copyright holder* of the right to develop alternative markets for the works.") (emphasis added).

By failing to consider in its fourth-factor analysis the automobile, television, and wearable-device markets, the court below improperly focused not on Oracle's reasonable or likely to be developed licensing markets, but rather only on the effect of Google's challenged uses on the personal computing, tablet and smartphone markets. In its order denying Oracle's Rule 59 motion, the court stated:

> In its new trial motion, Oracle now argues that it was error to limit the device uses in play to smartphones and tablets. We should have had one mega-trial on all uses, it urges. This, however, ignores the fact that Oracle's earlier win on infringement in 2010 — the same win it wished to take as a given without relitigation — concerned only smartphones and tablets. ***And, it ignores the obvious — one use might be a fair use but another use might not, and the four statutory factors are to be applied on a use-by-use basis.***

7

> Significantly, the language of Section 107(4) of Title 17 of the United States Code directs us to consider 'the effect of the use upon the potential market for or value of the copyrighted work.' Oracle cites no authority whatsoever for the proposition that all uses must stand or fall together under the fair use test of Section 107.

2016 U.S. Dist. LEXIS 145601, at *15 (emphasis added; quoting 17 U.S.C. § 107).

The district court allowed its evidentiary ruling excluding Google's specific uses of Oracle software in automobiles, televisions, and wearable devices from the infringement trial to infect the separate fair use inquiry. Contrary to what the district court concluded, the issue is not whether Google's use of Oracle's software in Android TV, Android Auto, and Android Wear constitutes copyright infringement, but rather whether Google's use of Oracle's copyrighted software in tablets and phones—the uses at issue in the trial—harmed Oracle's potential market for exploiting the copyrighted software in the derivative markets for televisions, automobiles, and watches and other wearable devices. Such a determination bears only on whether Google's use of Oracle's software is fair in connection with the uses at issue in the trial and *not* on whether Google's use of the software in Android TV, Android Auto, and Android Wear is infringing. In short, the district court erred in limiting the inquiry under the fourth fair use factor solely to the effect of Google's specific uses on Oracle's existing markets. *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012) (quoting

8

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990)) ("'Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works.' Control over the delayed market includes future markets.").

## **CONCLUSION**

"Copyright supplies the economic incentive to create and *disseminate* ideas." *Golan v. Holder*, 132 S. Ct. 873, 889 (2012) (emphasis in original; citation omitted). "In analyzing a fair use defense, it is not sufficient simply to conclude whether or not justification exists. The question remains how powerful, or persuasive, is the justification, because the court must weigh the strength of the secondary user's justification against factors favoring the copyright owner." Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1111 (1990).

A court cannot further the salutary objectives of copyright and apply the fair use defense consistently with those objectives when it misapplies even one of the four factors. *Amici* MPAA, IFTA and SAG-AFTRA therefore request that this

/ / /

/ / /

/ / /

/ / /

/ / /

9

Court employ the proper analysis of market harm under the fourth factor or remand so that the district court may do so.

DATED: February 17, 2017  MITCHELL SILBERBERG & KNUPP LLP
Robert H. Rotstein
J. Matthew Williams

By: /s/ Robert H. Rotstein
Robert H. Rotstein

Attorneys for *Amici Curiae* the Motion Picture Association of America, Inc. and Independent Film & Television Alliance

SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS

DATED: February 17, 2017  /s/ Duncan W. Crabtree-Ireland
Duncan W. Crabtree-Ireland

Attorney for *Amicus Curiae,*
Screen Actors Guild-American Federation of Television and Radio Artists

FORM 19. Certificate of Compliance With Rule 32(a)      Form 19
Rev. 12/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a) or Federal Rule of Federal Circuit Rule 28.1.

☒ This brief contains [state the number of] __2,649__ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), or

☐ This brief uses a monospaced typeface and contains [state the number of] _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒ This brief has been prepared in a proportionally spaced typeface using

[state name and version of word processing program] __Microsoft Word Professional Plus 2010__ in

[state font size and name of type style] __14 pt. Times New Roman__, or

☐ This brief has been prepared in a monospaced typeface using

[state name and version of word processing program] _____ with

[state number of characters per inch and name of type style] _____.

/s/ Robert H. Rotstein
(Signature of Attorney)

Robert H. Rotstein
(Name of Attorney)

Amici Curiae
(State whether representing appellant, appellee, etc.)

Motion Pictures Association of America, Inc. (MPAA), and Independent Film & Television Alliance (IFTA)

February 17, 2017
(Date)

Reset Fields

FORM 30. Certificate of Service

Form 30
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on February 17, 2017
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Robert H. Rotstein | /s/ Robert H. Rotstein |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | MITCHELL SILBERBERG & KNUPP LLP |
| Address | 11377 West Olympic Boulevard |
| City, State, Zip | Los Angeles, CA 90064 |
| Telephone Number | (310) 312-2000 |
| Fax Number | (310) 312-3100 |
| E-Mail Address | rxr@msk.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields