# No. 17-1118

IN THE
# United States Court of Appeals
# for the Federal Circuit

ORACLE AMERICA, INC.,

*Plaintiff – Appellant,*

v.

GOOGLE, INC.,

*Defendant – Cross-Appellant.*

On Appeal from the United States District Court
Northern District of California, San Francisco Division
No. 3:10-cv-03561-WHA Hon. William H. Alsup

**BRIEF *AMICUS CURIAE* OF INTELLECTUAL PROPERTY SCHOLARS IN SUPPORT OF PLAINTIFF-APPELLANT**

ANTIGONE G. PEYTON
**CLOUDIGY LAW PLLC**
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
(703) 436-2033
antigone.peyton@cloudigylaw.com

*Counsel for Amici Intellectual Property Scholars*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the

undersigned states that the amici are not a corporation that issues stock

or has a parent corporation that issues stock.

The amici[1] are:
Sandra Aistars
Clinical Professor
Antonin Scalia Law School, George Mason University

Matthew Barblan
Executive Director, Center for the Protection of Intellectual Property
Antonin Scalia Law School, George Mason University

Jon A. Baumgarten
Former General Counsel to the U.S. Copyright Office (1976-1979)

Stephen Carlisle
Copyright Officer, Alvin Sherman Library, Research, and Information
Technology Center
Nova Southeastern University

Jon M. Garon
Dean and Professor of Law
Shepard Broad College of Law, Nova Southeastern University

Hugh Hansen
Professor of Law
Director, Fordham Intellectual Property Law Institute
Fordham University School of Law

---

[1] Institutional affiliations are included for identification purposes only. Amici are join this brief in their personal capacities and do not purport to speak for the institutions with which they are affiliated.

Devlin Hartline
Assistant Director, Center for the Protection of Intellectual Property
Antonin Scalia Law School, George Mason University

Jiarui Liu
Assistant Professor of Law
Director, International Relations for LL.M. Programs
University of San Francisco School of Law

Adam Mossoff
Professor of Law
Antonin Scalia Law School, George Mason University

Raymond T. Nimmer
Leonard Childs Professor of Law
Co-Director, Houston Intellectual Property and Information Law
Institute
University of Houston Law Center

Eric Priest
Associate Professor
Faculty Director, LL.M. Program
University of Oregon School of Law

Sean O 'Connor
Boeing International Professor of Law
University of Washington School of Law

Mark F. Schultz
Associate Professor of Law
Southern Illinois University School of Law

# Interest of the Amici Curiae[2]

The amici are 13 Professors and Scholars of Intellectual Property Law. The scholars ("Scholars") teach and research copyright law and other related areas of the law and/or have served in the highest positions of authority with respect to the development and administration of copyright law in the United States. The Scholars have no stake in the outcome of this case other than their interest in ensuring that copyright law develops in a manner that respects its Constitutional and statutory basis and ensures that creativity and innovation continue to flourish.

---

[2] Pursuant to the Federal Rule of Appellate Procedure 29(c) and Local Rule 29.1, amici curiae state that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than the amici curiae or their counsel, contributed money that was intended to fund preparing or submitting the brief. All parties have consented to the filing of this brief.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.....................................................I

INTEREST OF THE AMICI CURIAE.............................................................III

SUMMARY OF ARGUMENT ........................................................................ 1

ARGUMENT ................................................................................................ 2

I. FAIR USE DOES NOT ERODE CREATORS' EXCLUSIVE RIGHTS ....... 2

II. THE FAIR USE DEFENSE IS NARROW BY DESIGN ............................. 4

A. THE FIRST FAIR USE FACTOR GUARDS THE CREATOR'S RIGHT TO PROFIT
FROM A WORK ........................................................................................ 4

1. Fair Use Does Not Excuse Commercial Infringing Uses ............... 4

2. Using Copyrighted Material For Its Original Purpose Is Not
Transformative ......................................................................... 6

B. THE SECOND FAIR USE FACTOR GUARDS INCENTIVES FOR CREATIVITY .....12

C. THE THIRD FAIR USE FACTOR GUARDS THE CREATOR'S RIGHT TO EXPLOIT
THE HEART OF HIS WORK.................................................................13

D. THE FOURTH FAIR USE FACTOR PROTECTS THE CREATOR'S RIGHT TO
ENTER POTENTIAL MARKETS...........................................................14

III. THERE IS NO DIFFERENT TEST FOR SOFTWARE CODE.............17

# TABLE OF AUTHORITIES

## CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)...........16

*Advanced Computer Servs. of Michigan, Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356 (E.D. Va. 1994)................................................................................19

*Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 92 U.S.P.Q.2d 1917 (N.D. Cal. 2009).................................................................................................18

*Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832 (Fed. Cir. 1992) ........................................................................................................................18

*Authors Guild v. Hathitrust*, 902 F.Supp 2s 445 (755 F.3d 87)......................8

*Authors Guild, Inc. v. Google Inc.*, 954 F. Supp. 2d 282 (S.D.N.Y. 2013), *aff'd sub nom. Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ..........................................................................................................................8

*Bill Graham Archives v. Dorling Kindersley Ltd.* 448 F.3d 605 (2nd Circ. 2006). ..................................................................................................................8

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267 (6th Cir. 2009) ...............................................................................................................12

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994). ..........................................................................6, 7, 15, 16

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998) ...............................................................................................................11

*Diamond v. Chakrabarty*, 447 U.S. 303, 100 S. Ct. 2204, 65 L. Ed. 2d 144 (1980) ............................................................................................................17

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559 (S.D. Cal. 1996), <u>aff'd</u>, 109 F.3d 1394 (9th Cir. 1997)...............................11

*Gaylord v. United States*, 595 F.3d 1364 (Fed. Cir. 2010). ...............................5

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) ...............................................................passim

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir. 1998). ..........13, 15

*Kienitz v. Sconnie Nation LLC*, 766 F.3d 756 (7th Cir. 2014) .........................9

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 195 L. Ed. 2d 368 (2016). ................................................................................................4

*Micro Star v. Formgen, Inc.*, 154 F.3d 1107 (9th Cir. 1998) ........................12

*Nat'l Rifle Ass'n of Am. v. Handgun Control Fed'n of Ohio*, 15 F.3d 559 (6th Cir. 1994)................................................................................................12

*Oracle Am. Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014)...1, 6, 13, 15

*Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ......................8

*Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992), <u>as amended</u> (Jan. 6, 1993). ....................................................................18

*Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000) ..................................................................................................18

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984)............................................... 4, 5, 16

*TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016) ...................9

*TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246 (S.D. Fla. 2010)................................................................................................18

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 95 S. Ct. 2040, 45 L. Ed. 2d 84 (1975).......................................................................................2

*Ty, Inc. v. Publications Int'l Ltd.,* 292 F.3d 512 (7th Cir. 2002)...................16

*Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006). .......................................................................................9, 13, 19

*Worldwide Church of God v. Phila. Church of God*, 227 F.3d 1110 (9th Cir. 2000) ..................................................................................................9

**STATUTES**

17 U.S.C. §106.............................................................................................2, 8
17 U.S.C. §107................................................................................................3

**OTHER AUTHORITIES**

*The Scope of Fair Use*; *Hearing Before the Subcommittee on Courts, Intellectual Property, and the Internet of the H. Comm. on the Judiciary,* 113th Cong., 13-22 (2014) (Statement of June Besek, Executive Director,

Kernochan Center for Law, Media and the Arts and lecturer-in-law,
Columbia School of Law) ...............................................................8

## SUMMARY OF ARGUMENT

Amici Scholars provide this brief history of the development of the fair use defense because consideration of the application of fair use in this case must be faithful to the underlying purposes of both copyright law and the fair use defense.[3] As this court rightly observed, "[t]he fair use doctrine has been referred to as 'the most troublesome in the whole law of copyright.' "[4] An overbroad application of the fair use defense threatens the fundamental protections of copyright law. Understanding the origin and purpose of the defense and its multifactor test is critical to ensuring that the fair use defense does not expand to swallow meaningful prohibitions on infringement.

That this case involves software code rather than other types of creative works does not change the fair use analysis. While technological advancement may require courts to consider existing copyright law in new situations, it does not change the existing fair use multifactor test. There are significant negative ramifications for all authors from the application of fair use here if the infringement of a

_____

[3] Amici Scholars acknowledge and appreciate the contributions to the drafting of this brief of Rebecca Cusey, a student at Antonin Scalia Law School.

[4] *Oracle Am. Inc. v. Google Inc.*, 750 F.3d 1339, 1373 (Fed. Cir. 2014).

creative work for the purposes of creating a competing commercial product is allowed.

## ARGUMENT

### I. FAIR USE DOES NOT ERODE CREATORS' EXCLUSIVE RIGHTS

"The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good."[5] Accordingly, copyright law provides an incentive for expression and innovation by allowing a creator to control and profit from his or her work. The creator of a copyrighted work has the exclusive right to reproduce the work, create derivative works, distribute the work, perform the work, and display the work.[6] Congress codified a doctrine long-used in common law when it incorporated the fair use defense into the 1976 Copyright Act to shield infringers from liability in certain limited circumstances where doing so does not erode the exclusive rights and intended benefits of copyright protection.

The fair use defense recognizes that in releasing their work to the public marketplace, copyright owners implicitly agree to critique and

---

[5] *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).
[6] 17 U.S.C. §106.

commentary.[7] But the fair use defense does not excuse use of a protected work that supersedes the work.

> "[A] reviewer may fairly cite largely from the original work, if his design be really and truly to use the passages for the purposes of fair and reasonable criticism. On the other hand, it is as clear, that if he thus cites the most important parts of the work, with a view, not to criticize, but to supersede the use of the original work, and substitute the review for it, such a use will be deemed in law a piracy."[8]

To set the contours of the fair use defense, Congress enumerated four non-exclusive factors in section 107 of the Copyright Act for courts to consider in determining whether an infringement may be excused by the fair use defense. Those factors are:

a. The purpose and character of the use of the work, including whether the use is commercial in nature or for nonprofit educational purposes;
b. The nature of the copyrighted work;
c. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
d. The effect of the use on the potential market for or value of the copyrighted work.[9]

None of these non-exclusive factors outweighs the others and they must be balanced in light of the Act as a whole.[10] The Supreme Court recently

---

[7] *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 550 (1985).
[8] *Id. at* 550 (citing *Folsom v. Marsh, 9 F. Cas. 342 (C.C.D. Mass. 1841)*.
[9] 17 U.S.C. §107.

provided guidance regarding multi-factor tests. Although one factor may carry significant weight, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals."[11]

## II. THE FAIR USE DEFENSE IS NARROW BY DESIGN

The four factors proscribe the narrow parameters of fair use. Each factor provides a mechanism for considering the impact of excusing the infringement on the exclusive rights of authors. Where a use impinges on the fundamental exclusive rights of creators to profit from and refine their work, the fair use defense does not apply.

### A. The First Fair Use Factor Guards The Creator's Right To Profit From A Work

Courts applying the first factor and reviewing the nature and purpose of the infringing use examine whether the use is commercial and whether the use is transformative of the original work.

*1. Fair Use Does Not Excuse Commercial Infringing Uses*

The focus on the commercial nature of the infringing use makes sense given the purpose of copyright law to allow creators to benefit

---

[10] *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 455 (1984) ("Congress has plainly instructed us that fair use analysis calls for a sensitive balancing of interests.").

[11] *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).

financially from their works in the commercial marketplace. To protect that right, courts have found the commercial nature of an infringing use to weigh against finding fair use. For example in *Gaylord v. United States*, this Court found Post Office revenue from stamps featuring the image of a copyrighted statue to be a commercial benefit weighing against a finding of fair use.[12] The same concept applied in reverse in *Sony Corp. v. Universal City Studios,* where the Supreme Court held that using Betamax devices to record television shows was excused by the fair use defense based on the non-commercial nature of the time shifting of personal television viewing.[13] The Court indicated that commercial use of recorded television content would weigh against fair use.[14]

The critical question is "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."[15] Here, Google profited from the use of Oracle's copyrighted work without paying the customary price, i.e., without getting a license.[16] Accordingly, the commerciality of Google's work should weigh

---

[12] *Gaylord v. United States*, 595 F.3d 1364, 1374 (Fed. Cir. 2010).
[13] *Sony Corp. v. Universal*, 464 U.S. 417 at 449.
[14] *Id*.
[15] *Harper & Row*, 471 U.S. at 562, 105 S. Ct. at 2231.
[16] Oracle Br. at 11-13; 28-29.

against a finding of fair use.

### 2. Using Copyrighted Material For Its Original Purpose Is Not Transformative

In addition to considering the commerciality of a use, courts also consider whether the use is "transformative." As this Court recognized works are transformative when they "use copyrighted material for purposes distinct from the purpose of the original material. . . . A work is not transformative where the user makes no alteration to the expressive content or message of the original work.[17]

The Supreme Court introduced the concept of "transformative" in *Campbell v. Acuff-Rose Music*, wherein it found that a rap group's reimagining of Roy Orbison's song "Pretty Woman" could qualify for the fair use defense because it parodied the original work and remanded for consideration in light of the Court's analysis. The Court instructed, "[t]he central purpose of this investigation is to see, in Justice Story's words, whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or

_____

[17] *Oracle Am. Inc.*, 750 F.3d at 1374.

message"[18] Importantly in *Campbell*, the Court differentiated such transformative parody, critical, or educational uses of works, which are protected by the fair use defense, from derivative works, which are not. The distinction protects the exclusive right of copyright owners to create derivatives and advances the purpose of fair use. There is societal benefit to parody and critique, and copyright owners are unlikely to create parody or criticism of their own works. So parodies or critical uses of a work do not supersede the creator's market for its work or derivatives of that work. Consistent with the original purpose behind the fair use defense to protect critique and commentary, courts apply fair use to excuse uses, like parody, that are considered transformative.

After *Campbell*, some courts expanded the concept of "transformative" beyond the Supreme Court's original use of the term. In doing so, these courts considered how an infringing work is used in addition to the use itself. This departure unfortunately leads some to disconnect "transformative" from its original context of "new works"

---

[18] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)(internal citations omitted).

and attach it to a much broader idea of "new purpose."[19] The Second Circuit found fair use based on the purpose of a historical timeline.[20] And both the Ninth and Second Circuits found fair use based on the purpose of indexing information on the Internet or creating searchable databases.[21] This expansion of transformative use not only appears to be at odds with the Supreme Court's original use of the term "transformative" in *Campbell*, but it also threatens to subsume the copyright holder's exclusive right to create derivative works.[22]

In the Copyright Act, the word "transform" appears only once: in the definition of a derivative work.  *See* 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works . . . [including] any other form in which a work may be recast, *transformed*, or adapted.") (emphasis added). As the Seventh Circuit noted the

---

[19] *See The Scope of Fair Use*; *Hearing Before the Subcommittee on Courts, Intellectual Property, and the Internet of the H. Comm. on the Judiciary,* 113th Cong., 13-22 (2014) (Statement of June, Besek, Executive Director, Kernochan Center for Law, Media and the Arts and lecturer-in-law, Columbia School of Law).

[20] *Bill Graham Archives v. Dorling Kindersley Ltd*. 448 F.3d 605 (2nd Circ. 2006).

[21] *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007); *Authors Guild, Inc. v. Google Inc.,* 954 F. Supp. 2d 282, 284 (S.D.N.Y. 2013), *aff'd sub nom. Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015); *Authors Guild v. Hathitrust*, 902 F. Supp 2d 445 (2d Cir. 2014).

[22] 17 U.S.C. § 106(2).

expanded approach to transformative use "could override 17 U.S.C. § 106(2), which protects derivative works."[23]  Accordingly, the Seventh Circuit thought it best "to stick with the statutory list."[24]  As they should be, courts are increasingly concerned about the over-expansion of "transformative".[25]

Nevertheless, even the seemingly expanded view of what is "transformative" does not change the fact that using copyrighted material for the "same intrinsic purpose" as the original is not transformative.[26] Moreover, even cases that take an expanded view of "transformative" rely on relatively non-commercial public benefits from the infringing uses and facts such as that they lead users to purchase the

---

[23] *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014).
[24] *Id.*
[25] The Second Circuit recently noted the Seventh Circuit's criticism in *TCA Television Corp. v. McCollum*, 839 F.3d 168, 181 (2d Cir. 2016) ("Insofar as *Cariou* might be thought to represent the high-water mark of our court's recognition of transformative works, it has drawn some criticism.").  Tellingly, the Second Circuit in *TCA* found the use of "Who's on First?" in the accused stage play no to be transformative, ultimately determining that the use was not a fair use.  *Id.* at 187.
[26] *Worldwide Church of God v. Phila. Church of God*, 227 F.3d 1110, 1120 (9th Cir. 2000); *see also Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006).

original work from the creator.[27] In other words, to be transformative a use must not supersede the original work in the marketplace.

Here, the district court concluded that Google used the declaring code and structure, sequence, and organization ("SSO") that it copied from Oracle for the same purpose and to achieve the same functions as Oracle.[28] Thus, Google's use is not transformative.

The district court appears to have confused the issue by concluding that the jury had a reasonable basis to find transformation based on Google placing Oracle's API packages in a supposedly new "context" of mobile phones. Even assuming arguendo that this was factually true (which Oracle disputes), that is not transformative. It is an infringing derivative work.

The right to create or license derivative works rests exclusively with the copyright owner, whether the copyright owner chooses to exercise the right or not. "It would ... not serve the ends of the Copyright Act—*i.e.,* to advance the arts—if artists were denied their monopoly over derivative versions of their creative works merely because they made the artistic decision not to saturate those markets with variations

---

[27] *Authors Guild v. Google*, 804 F.3d at 217, 227; 755 F.3d at 97.
[28] App. 42.

of their original."[29] Accordingly, the fair use defense did not excuse

infringement by writers of a book of trivia quizzes about the television

show *Seinfeld*, because the book did not "criticize, expose, or otherwise

comment upon Seinfeld" but was an infringing derivative work.[30]

Likewise, a book that synopsized a television show did not have

sufficient commentary to make the work transformative rather than

derivative.[31] Further, adding additional content to a copyrighted work

and using it for the same purpose as the copyrighted work is not

transformative. Accordingly, the use of copyrighted characters in new

stories is not fair use.[32] Nor is use of elements of a musical composition

---

[29] *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 146 (2d Cir. 1998).

[30] *Id.* at 142 (2d Cir. 1998).

[31] *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1375 (2d Cir. 1993).

[32] *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997) (book using Cat in the Hat character not excused by fair use).

in new musical compositions.[33] Nor is addition of new levels to a video game in a new video game.[34]

What Google did here – copying verbatim Oracle's declaring code and SSO and using it for the same purpose in a mobile device – is the same as taking material from a television show and using it in a book or taking copyrighted characters from one story and using them in a new story. Essentially, Google created an infringing derivative work that is not excused by fair use.

## B. The Second Fair Use Factor Guards Incentives For Creativity

The second factor's focus on the nature of the copyrighted work protects the incentive to create and profit from derivative works. The more creative, as opposed to simply factual, a copyrighted work, the less likely infringement will be excused by fair use.[35] Software code is creative. For example, applying the second fair use factor the Ninth

---

[33] *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267 (6th Cir. 2009)(fair use defense did not excuse a hip hop group's use of portions of a famous funk song "Atomic Dog.").
[34] *Micro Star v. Formgen, Inc.*, 154 F.3d 1107,1113 (9th Cir. 1998). *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1375 (2d Cir. 1993).
[35] *See, e.g. Nat'l Rifle Ass'n of Am. v. Handgun Control Fed'n of Ohio*, 15 F.3d 559, 562 (6th Cir. 1994) (stating that factual works weigh less than creative works in weighing second factor).

Circuit held that software allowing a computer with one operating system to access data on a computer with a different operating system was sufficiently creative to weigh against fair use.[36] This Court already recognized the creativity of Oracle's work.[37] Indeed, the record below reflects significant creativity.[38] Accordingly, the second factor weighs against fair use.

## C. The Third Fair Use Factor Guards The Creator's Right To Exploit The Heart Of His Work

The third factor focuses on the amount and substantiality of the portion of the protected work used in the infringing work. Generally, reproducing an entire work defeats the fair use defense. For example, the fair use defense did not excuse a company that allowed customers to listen to entire radio broadcasts by calling a number on their phone. The court found that the potential scope of transmittal of "every radio station in the cities Kirkwood serves, 24 hours a day, seven days a week," weighed against fair use.[39]

But even if a use does not appropriate the entire copyrighted

---

[36] *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006).
[37] *Oracle Am. Inc.*, 750 F.3d at 1374.
[38] Oracle Br. at 6-8; 39-40.
[39] *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998).

work, courts find that using the most important parts of a copyrighted work weigh against a finding of fair use. For example, when a news magazine printed an unauthorized excerpt from former President Ford's autobiography prior to his publication of his work, the Supreme Court held that fair use did not excuse the use, even though the purpose was news reporting.[40] The Court found that the magazine "took what was essentially the heart of the book."[41] Accordingly, courts must consider quality, as well as quantity, of the work in considering the third factor.

Here, Google copied all of the declaring code and SSO across 37 Java API packages comprising well over 600 classes and 6000 methods, which constitutes the heart of Oracle's work.[42]  As a result, the third factor should weigh against a finding of fair use.

## D. The Fourth Fair Use Factor Protects The Creator's Right To Enter Potential Markets

This Court held in the last appeal that the fourth factor's focus on the creator's market for the copyrighted work is "undoubtedly the

---

[40] *Harper & Row v. Nation Enters.*, 471 U.S. 539.
[41] *Id.* at 564–65.
[42] Oracle Br. at 44-45.

single most important element of fair use."[43] It strikes closest to the heart of copyright law's incentive structure, which is designed to promote the creation of creative works by reserving for creators the fruit of their labor in the market for their works, allowing them to focus on improving and perfecting their creative endeavors and to pursue new ones.

The fourth fair use factor weighs against a finding of fair use where the defendant "replaces [the copyright holder] as the supplier of [its own content]."[44]  It considers both actual and potential markets, as well as what would happen if the defendants' use were to become "unrestricted and widespread."[45]  In other words, of particular concern to courts is whether the proponent of the use of the work will negatively affect the market for the original work, the copyright holder's licensing market, markets that may develop in the future, and the consequence of others engaging in the infringing conduct.  Moreover, where the infringing use is commercial in nature, courts may presume market

_____

[43] *Oracle Am., Inc.*, 750 F.3d at 1376; *see also Harper & Row. v. Nation*, 471 U.S. at 566 (market is "undoubtedly the single most important element of fair use).
[44] *Infinity Broadcast*, 150 F.3d at 111.
[45] *Campbell*, 510 U.S. at 590.

harm.[46]

In *Harper & Row*, the Supreme Court considered the negative effect on the market for President Ford's book and also on the market for first publication of excerpts.[47]  The Seventh Circuit put it this way:

> [W]e may say that copying that is complementary to the copyrighted work (in the sense that nails are complements of hammers) is fair use, but copying that is a substitute for the copyrighted work (in the sense that nails are substitutes for pegs or screws), or for derivative works from the copyrighted work, is not fair use.[48]

In *A&M Records, Inc. v. Napster, Inc.*,[49] the Ninth Circuit considered both existing and future markets for music when it held that Napster's provision of free downloads of music harmed the developing future market for online music sales. The court also considered what would happen if others engaged in Napster's conduct.[50]

Here, Google created a product that competed with Oracle's copyrighted work, which caused a decrease in Oracle's licensing market

---

[46] *Sony v. Universal*, 464 U.S. at 451.
[47] *Harper & Row*, 471 U.S. at 602.
[48] *Ty, Inc. v. Publications Int'l Ltd.,* 292 F.3d 512, 517 (7th Cir. 2002) (citation omitted).
[49] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001).
[50] *Id.* at 1018.

and also prevented Oracle from participating in developing markets.[51] Accordingly, the fourth factor should weigh against a finding of fair use.

### III. THERE IS NO DIFFERENT TEST FOR SOFTWARE CODE

The consideration of software code does not require a different approach to the fair use analysis. As this court well knows, the Supreme Court rejected special tests for different types of technology in the Patent Act, declaring that Congress intended the Act to cover "everything under the sun that is made by man."[52] The same rationale applies in copyright cases. Computer software code is a creative work protected by copyright law like any other creative work. Accordingly, application of the four factors to software code must be consistent with cases involving other creative works.

As with other creative works, application of the multifactor fair use test results in courts holding some uses of protected software code to be fair use and others not. For instance, minimal intermediate copying involved in reverse engineering software can be fair use when it is the only way to access information not protected by copyright and is

---

[51] Oracle Br. at 49-51.
[52] *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (citing S.Rep.No.1979, 82d Cong., 2d Sess., 5 (1952); H.R.Rep.No.1923, 82d Cong., 2d Sess., 6 (1952).

not commercial.[53] In *Sega v. Accolade*, Accolade reverse engineered several of Sega's games in order to find elements related to compatibility with the Sega console.[54] Accolade later created games that could be played on the Sega console. Notably, Accolade copied only the minimum amount necessary to unlock the Sega system and did not use any protected code in its games. The court found that the minimal intermediate copying of protected software in order to understand functional elements of the system was excused by the fair use defense.

In contrast, fair use did not excuse phone resellers who copied and modified phone software in order to unlock phones.[55] Nor did fair use excuse a defendant who copied complete versions of software onto a hard drive, and then modified the code to enable the software to run on non-proprietary computers.[56] Likewise, when a sheriff's department put copies of software on thousands of computers using hard drive

---

[53] *See, e.g. Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 598 (9th Cir. 2000); *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 838 (Fed. Cir. 1992); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1514 (9th Cir. 1992), *as amended* (Jan. 6, 1993).
[54] *Sega v. Accolade*, 977 F.2d 1510 at 1514.
[55] *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246 (S.D. Fla. 2010).
[56] *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931 (N.D. Cal. 2009) (aff'd by *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1152 (9th Cir. 2011) (cert. denied).

imaging, the court rejected the fair use defense.[57] In another example,

using software in diagnosing computer problems was not fair use

because it was commercial in nature and affected the market for the

original software.[58] In line with these decisions, the fair use defense

should not excuse the infringement in this case, where Google copied

thousands of lines of Oracle's code verbatim to use for the same purpose

in competing products.

Copyright incentivizes new creative works. Software coding is a

highly creative field. The recent exponential growth in technology is a

direct result of such creativity. Expanding the fair use defense to excuse

appropriation of software code for commercial gain will harm both

creators and the public, as creators will have less incentive to develop

new software. The public will not be well-served by policy that slows

down the creative advancement of software. Nor will the public be well-

served by an application of fair use that will gut copyright protection for

other creative works by excusing a purely commercial copying of a

creative work that harms the market for the original or its derivatives.

---

[57] *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006).
[58] *Advanced Computer Servs. of Michigan, Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 359 (E.D. Va. 1994).

Dated: February 17, 2017                      Respectfully submitted,


*/s/ Antigone G. Peyton*

Antigone G. Peyton
antigone.peyton@cloudigylaw.com
**CLOUDIGY LAW PLLC**
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
(703) 436-2033

**CERTIFICATE OF TYPE-VOLUME COMPLIANCE**

The undersigned certifies that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 5383 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

Dated: February 17, 2017

*/s/ Antigone G. Peyton*

Antigone G. Peyton

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 17, 2017 a true and correct copy of the foregoing brief was electronically filed using the appellate CM/ECF system. All counsel of record are registered CM/ECF users and will be served with a Notice of Docket Activity pursuant to Federal Circuit Local Rule 25.1(h).

Dated: February 17, 2017

*/s/ Antigone G. Peyton*

Antigone G. Peyton