**Nos. 17-1118, 17-1202**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

ORACLE AMERICA, INC.,

*Plaintiff-Appellant*

v.

GOOGLE LLC,

*Defendant-Cross-Appellant.*

---

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:10-cv-0356-WHA, Hon. William H. Alsup

---

# BRIEF OF THE AMERICAN ANTITRUST INSTITUTE AS AMICUS CURIAE IN SUPPORT OF PETITION FOR REHEARING EN BANC

---

RICHARD M. BRUNELL
AMERICAN ANTITRUST INSTITUTE
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 600-9640
rbrunell@antitrustinstitute.org

*Counsel for Amicus Curiae
American Antitrust Institute*

June 12, 2018

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for Amicus Curiae certifies that:

1. The full names of every party or amicus represented by me is: The American Antitrust Institute.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: None

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court and who are not already listed on the docket for the current case are: None

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case: None.

s/ Richard M. Brunell
Richard M. Brunell

Dated: June 12, 2018

## TABLE OF CONTENTS


CERTIFICATE OF INTEREST .............................................................. i

TABLE OF CONTENTS .............................................................. ii

TABLE OF AUTHORITIES .............................................................. iii

INTEREST OF AMICUS CURIAE .............................................................. 1

INTRODUCTION .............................................................. 2

ARGUMENT .............................................................. 3

I. THE PANEL'S RULINGS ON COPYRIGHTABILITY AND FAIR USE INVOLVE QUESTIONS OF EXCEPTIONAL IMPORTANCE .............................................................. 3

A. Copyrights on Software Interfaces Risk Lock-in and Holdup .............................................................. 3

B. The Panel's Rulings Fail to Consider Interoperabilty and Compatibility Concerns .............................................................. 8

C. The Panel's Restrictive Reading of "Transformative Use" Guts the Fair-Use Doctrine for Software .............................................................. 11

CONCLUSION .............................................................. 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### CASES

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) .................... 6

*Authors Guild, Inc. v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015) .................... 12

*Bilski v. Kappos*,
561 U.S. 593 (2010) .................... 7

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .................... 11

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) .................... 6

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .................... 7

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) .................... 14

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
49 F.3d 807 (1st Cir. 1995) .................... 4, 5, 6, 9, 10

*Microsoft Corp. v. Motorola, Inc.*,
795 F.3d 1024 (9th Cir. 2015) .................... 7

*Oracle Am., Inc. v. Google Inc.*,
2016 WL 3181206 (N.D. Cal. June 8, 2016) .................... 11

*Oracle Am., Inc. v. Google Inc.*,
750 F.3d 1339 (Fed. Cir. 2014) .................... 2, 8, 9, 10

*Oracle Am., Inc. v. Google LLC*,
886 F.3d 1179 (Fed. Cir. 2018) .................... 2, 10, 11, 12

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) .................... 2, 4, 5, 9

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013) .................... 11, 12

*Sony Computer Entm't, Inc. v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000) .................... 13

*Twentieth Century Music Corp. v. Aiken*,
422 U.S. 151 (1975) .......... 2

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) .......... 13

**STATUTES**

17 U.S.C. § 102 (2012) .......... 2, 12

**OTHER AUTHORITIES**

Clark D. Asay, *Software's Copyright Anticommons*,
66 Emory L.J. 265 (2017) .......... 8, 13

Donald S. Chisum et al., *Last Frontier Conference Report on Copyright Protection of Computer Software*,
30 Jurimetrics 15 (1989) .......... 4

*Final Report of the Nat'l Commission on New Technological Uses of Copyrighted Works* (1978) .......... 4

William F. Patry, *Patry on Fair Use* (May 2018 Update) .......... 13

Pamela Samuelson, *The Uneasy Case for Software Copyrights Revisited*, 79 Geo. Wash. L. Rev. 1746 (2011) .......... 5

Brief for the United States as Amicus Curiae, *Google, Inc. v. Oracle America, Inc.*, 135 S.Ct. 2887 (2015) (No. 14-410) .......... 9, 10

## INTEREST OF AMICUS CURIAE

The American Antitrust Institute ("AAI") is an independent non-profit organization devoted to promoting competition that protects consumers, businesses, and society. *See* http://www.antitrustinstitute.org.[1] AAI serves the public through research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a vital component of national and international competition policy. AAI also seeks to ensure that intellectual property laws are interpreted and applied in a manner that reflects their ultimate goals of promoting innovation, competition, and consumer welfare. AAI submits this brief because the Panel's application of the copyright laws to computer software interfaces like the Java API declarations at issue do not serve those goals.

---

[1] Individual views of members of AAI's Board of Directors or Advisory Board may differ from AAI's positions. Pursuant to Fed. R. App. P. 29(b)(4), amicus curiae states: No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person or entity other than amicus curiae or its counsel contributed money that was intended to fund preparing or submitting this brief.

## INTRODUCTION

This Court should grant rehearing to consider the Panel's rulings that applications programming interface (API) declarations are entitled to copyright protection even though § 102(b) of the Copyright Act exempts "any . . . method of operation" from coverage, and the fair-use defense does not apply to software innovation built on a copyrighted interface unless the innovation changes the meaning or expression of the copied elements. *Oracle Am., Inc. v. Google Inc.* (*Oracle I*), 750 F.3d 1339 (Fed. Cir. 2014); *Oracle Am., Inc. v. Google LLC* (*Oracle II*), 886 F.3d 1179 (Fed. Cir. 2018). Those rulings fail to consider that copyright law seeks to promote innovation and consumer welfare by preserving a *balance* between exclusive rights and competition. *E.g., Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). By ignoring the competition side of the equation—indeed, by rejecting the relevance of interoperability and compatibility concerns—the Panel's rulings may slow innovation in software-dependent markets. And the rulings fail to reflect that copyright precedents applicable to literary and similar works cannot be applied woodenly to computer software. *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992).

Software copyright issues will undoubtedly continue to arise in this Court, and the Panel's rulings will impact software developers generally. *See* Pet. for Rehearing *En Banc* 21. Although the Panel's rulings are "only" binding in cases where this Court has jurisdiction over copyright claims governed by Ninth Circuit law, the rulings will surely guide this Court's determinations of other regional circuit copyright law. Moreover, this Court's expertise in patent matters and the interwoven nature of patent and copyright law make the Panel's copyright rulings influential in other courts. And the Court's expansive jurisdiction gives it a special obligation to ensure that its regional circuit decisions are consistent with that law.

## ARGUMENT

## I. THE PANEL'S RULINGS ON COPYRIGHTABILITY AND FAIR USE INVOLVE QUESTIONS OF EXCEPTIONAL IMPORTANCE

### A. Copyrights on Software Interfaces Risk Lock-In and Holdup

Congress extended copyright to software in 1980 as a compromise among possible alternatives. Liberalizing patent protection, which was then unclear, would have gone too far. Defining a new, sui generis protection threatened to upset traditions of overarching patent and copy-

right laws. And affording no protection would have required the software industry to rely on contract, trade secret or other state laws. *See Final Report of the Nat'l Commission on New Technological Uses of Copyrighted Works* 16–19 (1978).

In the first decade after Congress made its choice, a group of leading intellectual property scholars observed that "Congress . . . has left to the courts the difficult task[] of determining how to apply copyright to computer programs," and "[c]ourts have generally articulated traditional copyright standards for determining the scope of protection . . . ." Donald S. Chisum et al., *Last Frontier Conference Report on Copyright Protection of Computer Software*, 30 Jurimetrics 15, 16–17 (1989). But applying concepts designed for literary works to computer software can be like trying "to fit the proverbial square peg in a round hole." *Sega*, 977 F.2d at 1524 (internal quotation omitted); *see Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 820 (1st Cir. 1995) (Boudin, J., concurring) (likening difficulties of applying copyright law to computer programs to "assembling a jigsaw puzzle whose pieces do not quite fit").

The problem, of course, is that "computer programs are, in essence, utilitarian articles—articles that accomplish tasks." *Sega*, 977

F.2d at 1524; *see Lotus*, 49 F.3d at 819 (Boudin, J., concurring) ("The computer program is a *means* for causing something to happen; it has a mechanical utility, an instrumental role, in accomplishing the world's work."). Thus, "[c]omputer programs pose unique problems for the application of the 'idea/expression distinction' that determines the extent of copyright protection." *Sega*, 977 F.2d at 1524. More generally, as Judge Boudin explained, "[u]tility does not bar copyright (dictionaries may be copyrighted), but it alters the calculus" for intellectual property protection. *Lotus*, 49 F.3d at 819. The benefit may be the same (stimulating the production of computer software),[2] "[b]ut the 'cost' side of the equation may be different [than for traditional literary works] where one places a very high value on public access to a useful innovation that may be the most efficient means of performing a given task." *Id.*

In particular, the calculus for protecting computer software "interfaces" like the API declarations at issue here or the command menu hi-

[2] *But see* Pamela Samuelson, *The Uneasy Case for Software Copyrights Revisited*, 79 Geo. Wash. L. Rev. 1746, 1776 (2011) (identifying "significant developments in the software industry [that] raise questions about how important copyright protection now is to enabling developers to recoup their R&D investments in software").

erarchy at issue in *Lotus* is problematic at best. As Judge Boudin explained:

> Requests for the protection of computer menus present the concern with fencing off access to the commons in an acute form. A new menu may be a creative work, but over time its importance may come to reside more in the investment that has been made by *users* in learning the menu and in building their own mini-programs—macros—in reliance upon the menu. Better typewriter keyboard layouts may exist, but the familiar QWERTY keyboard dominates the market because that is what everyone has learned to use.

*Id.* at 819–20.

This Court is familiar with the problem of *patents* on industry standards whereby implementers become locked-in to the standard, and the Court has adjusted patent remedies to prevent holders of standard essential patents (SEPs) from taking advantage of such lock-in. *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1305 (Fed. Cir. 2015); *Apple, Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1331–32 (Fed. Cir. 2014).

As the Ninth Circuit has noted, "[t]he development of standards . . . creates an opportunity for companies to engage in anti-competitive behavior" because "[o]nce a standard becomes widely adopted, SEP holders obtain substantial leverage over new product developers, who

have little choice but to incorporate SEP technologies into their products." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1030–31 (9th Cir. 2015); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396 (2006) (Kennedy, J., concurring) (noting potential for holdup "[w]hen the patented invention is but a small component of the product the companies seek to produce"); *Bilski v. Kappos*, 561 U.S. 593, 655-56 (2010) (Stevens, J., concurring in the judgment) (limitations on patentability of business methods informed by risk of holdup).

A similar problem arises with copyrighted software interfaces. Copyright on largely functional elements of software that become an industry standard gives a copyright holder anticompetitive power to thwart or tax innovative developments that build upon the elements, and to misappropriate for itself investments by users or developers in learning those elements. Even if the copyrighted elements are not as essential and the lock-in not as severe as with a SEP, the anticompetitive harm from a copyright holder's ability to raise the costs of the innovative developments—to the detriment of new entrants, customers of the incumbent, and the public at large—is similar and appropriately

cabined by a liberal reading of the "method of operation" exception or the fair-use defense.

Indeed, absent a robust "method of operation" exception or fair-use defense, the risk of copyright holdup seems likely to increase as software development becomes increasingly collaborative and "any given piece of software may include dozens, hundreds, or even thousands of copyright holders." Clark D. Asay, *Software's Copyright Anticommons*, 66 Emory L.J. 265, 279 (2017). The "building-block approach to software development . . . means that some copyright holder of a software object within a particular software stack could become an obstacle to the entire stack's use." *Id.* at 314. The Panel's rulings are oblivious to these concerns.

### B. The Panel's Rulings Fail to Consider Interoperability and Compatibility Concerns

In rejecting the district court's determination that the API declarations constituted an unprotectable "method of operation," the Panel dismissed Google's arguments about interoperability and compatibility as irrelevant to copyrightability. *See Oracle I,* 750 F.3d at 1368–72. This was error. It is inconsistent with the First Circuit's conclusion that the command menu hierarchy in *Lotus* was not copyrightable, not-

withstanding expressive content. *See Lotus*, 49 F.2d at 817 ("That the Lotus command menu hierarchy is a 'method of operation' becomes clearer when one considers computer program compatibility."). And it defies the Ninth Circuit's holding that "functional requirements for compatibility . . . are not protected by copyright" under § 102(b). *Sega*, 977 F.2d at 1522.

At the same time, the Panel said that concerns about compatibility and interoperability may be relevant to fair use. *See Oracle I*, 750 F.3d at 1372, 1377. So did the United States. *See* Brief for the United States as Amicus Curiae 17, *Google, Inc. v. Oracle America, Inc.*, 135 S.Ct. 2887 (2015) (No. 14-410) (hereinafter U.S. Brief) (interoperability and lock-in concerns are "substantial and important" but "are far better addressed through the fair-use doctrine"); *see also Lotus*, 49 F.3d at 821 (Boudin, J., concurring) (suggesting that fair use was alternative doctrinal hook to ensure that program users do not "remain captives of [the copyright owner] because of an investment in learning made by the users and not [the copyright owner]").

Yet in its fair-use decision, the Panel dismissed compatibility or interoperability considerations. The Panel framed Google's compatibil-

ity argument as, "Google sought 'to capitalize on the fact that software developers were already trained and experienced in using the Java API packages at issue.'" *Oracle II,* 886 F.3d at 1206 (quoting *Oracle I*, 750 F.3d at 1371). "But," the Panel said, "there is no inherent right to copy in order to capitalize on the popularity of the copyrighted work or to meet the expectations of intended customers." *Id.* at 1206–07.

The Panel misconstrued the compatibility point. It is not about free-riding, but whether the public is served insofar as copying the API declarations gives developers "an option to exploit their own prior investment in learning" the packages rather than remain captives of the copyright owner. *Lotus*, 49 F.3d at 821 (Boudin, J., concurring); *cf.* U.S. Brief at 17 (noting petitioner's argument that copying "promoted innovation by enabling programmers to switch more easily to another platform"). And by the Panel's own prior reckoning, fostering interoperability of use should have been at least *relevant* to fair use.

### C. The Panel's Restrictive Reading of "Transformative Use" Guts the Fair-Use Doctrine for Software

"[T]he goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994). But the Panel's fair-use ruling guts the ability of the fair-use doctrine to promote innovation and competition in software-dependent markets by rejecting interoperability concerns, as noted above, and by holding that, no matter how innovative the new software, it does not qualify as a transformative use if "there are no changes to the expressive content or message" of the elements that are copied. *Oracle II*, 886 F.3d at 1202. As the district court noted, "[i]f this were enough to defeat fair use, it would be impossible ever to duplicate declaring code as fair use." *Oracle Am., Inc. v. Google, Inc.*, 2016 WL 3181206, at *8 (June 8, 2016).

The Panel relied on *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013), for the proposition that "a work is not transformative where the user 'makes no alteration to the *expressive content or message* of the original work.'" *Oracle II*, 886 F.3d at 1201 (quoting *Seltzer*, 725 F.3d at 1177). But *Seltzer* actually said, "In the *typical* 'non-transformative' case, the use is one which makes no alteration to the expressive content

or message of the original work." *Seltzer*, 725 F.3d at 1177 (emphasis added and omitted). *Seltzer* did not involve software code, nor did any of the other cases the Panel cited.

Works can also be transformative if they expand the utility of copyrighted works. *See, e.g., Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015) ("transformative use is one that communicates something new and different from the original *or expands its utility*") (emphasis added). Failing to recognize this point in the context of computer software would be perverse.[3] While expressive components of software may be protected by copyright (subject to §102(b)), software's benefit is primarily functional and utilitarian. And software interfaces become standards (and are copied) because of their functional, not expressive, value. Not recognizing utilitarian transformations would enable the holder of a software interface copyright with the barest degree of expressive creativity to monopolize (or tax) broad swaths of commerce

[3] The Panel did acknowledge that placing a copyrighted work in a new context to serve a different purpose may be transformative. *Oracle II*, 886 F.3d at 1202. But it concluded that copying elements of a software program to develop a new operating system for a new category of products (smartphones) would not serve a different purpose. If not *ipse dixit*, this conclusion can only be explained by the Panel's giving dispositive weight to whether there is a change in message.

that incorporate the interface and would thwart the most significant, pro-competitive uses of the fair-use doctrine in software-dependent industries. *Cf.* William F. Patry, *Patry on Fair Use* § 6:7 (May 2018 Update) (copyright only concerned with harm "caused by the use of expression").

Moreover, although the Panel claimed otherwise, reimplementing the declaring code itself changes the "message" of the code. *Cf. Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 446–49 (2d Cir. 2001) (recognizing computer code itself as a form of speech); *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 606–07 (9th Cir. 2000) ("Connectix's drafting of entirely new object code for its VGS program [is] transformative, despite the similarities in function and screen output."). As Professor Asay points out, "Software interfaces" like Java's API packages "are strictly functional in carrying out the specified functions and facilitating communication between software products. . . . Hence whatever creativity interfaces entail only becomes present and relevant when they are paired with the software that implements them." Asay at 321.

The Panel's fair-use ruling prevents the fair-use doctrine from acting as a safety valve "to avoid rigid application of the copyright statute [in the software context] when . . . it would stifle the very creativity which that law is designed to foster." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 550 n.3 (1985) (internal quotation omitted). Accordingly, it not only warrants rehearing itself but also supports rehearing of the Panel's categorical ruling that API declarations with a minimum of expressive creativity are copyrightable in the first place and not a method of operation.

## CONCLUSION

For the foregoing reasons this Court should grant Google's Petition for Rehearing En Banc.

Respectfully submitted,

/s/ Richard M. Brunell

RICHARD M. BRUNELL
AMERICAN ANTITRUST INSTITUTE
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(202) 600-9640
rbrunell@antitrustinstitute.org

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. Rule App. P. 29(b) and Fed. Cir. Rule 35(g). The brief contains 2600 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type styles requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally spaced type-face using Microsoft Word, in 14 point Century Schoolbook font.

s/ Richard M. Brunell

Dated: June 12, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing document on all registered counsel on June 12, 2018 by electronic means through the Court's CM/ECF system.

s/ Richard M. Brunell
Richard M. Brunell

Dated: June 12, 2018