Appeal Nos. 2017-1118, -1202

# United States Court of Appeals
*for the*
# Federal Circuit

ORACLE AMERICA, INC.,

*Plaintiff-Appellant,*

– v. –

GOOGLE LLC,

*Defendant-Cross Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 3:10-CV-03561-WHA HONORABLE WILLIAM H. ALSUP

**BRIEF FOR COPYRIGHT LAW PROFESSORS PAMELA SAMUELSON AND CLARK ASAY AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-CROSS APPELLANT GOOGLE LLC'S PETITION FOR REHEARING *EN BANC***

ROBERT WALKER
CATHERINE CRUMP
SAMUELSON LAW, TECHNOLOGY & PUBLIC POLICY CLINIC
UNIVERSITY OF CALIFORNIA BERKELEY, SCHOOL OF LAW
334 Boalt Hall (North Addition)
Berkeley, California 94720
(510) 664-4875

*Counsel of Record for Amici Curiae*

June 12, 2018

**FORM 9. Certificate of Interest** **Form 9 Rev. 10/17**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Oracle America, Inc. v. Google LLC

Case No. 17-1118, -1202

**CERTIFICATE OF INTEREST**

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ▣ (amicus) ☐ (name of party)

Copyright Professors Pamela Samuelson & Clark Asay

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Pamela Samuelson | None | None |
| Clark Asay | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

None

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary).

None

6/12/2018
Date

/s/ Robert Walker
Signature of counsel

Robert Walker
Printed name of counsel

Please Note: All questions must be answered

cc: ______________________________

Reset Fields

# TABLE OF CONTENTS

Certificate of Interest ........ i

Table of Authorities ........ iv

Statement of Interest ........ 1

Summary of Argument ........ 2

Argument ........ 2

I. The panel's *Oracle I* decision on Google's § 102(b) defense is even more inconsistent with Ninth Court precedents now than it was when issued in 2014. ........ 2

II. Having knocked out § 102(b) defenses for reuse of APIs in *Oracle I*, the panel's fair use decision now severely undercuts fair use defenses, contrary to Ninth Circuit precedent. ........ 4

III. The panel did not defer to fact finding implicit in the jury's verdict. ........ 5

IV. The panel's refusal to consider evidence of good faith and public benefits was contrary to Supreme Court and Ninth Circuit precedents. ........ 7

A. Evidence of a defendant's good faith is relevant to fair use analysis. ........ 7

B. Google's reimplementation of the Java API enabled research and innovation. ........ 8

Conclusion ........ 11

Certificate of Service

Certificate of Compliance

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ..................... 4

*Baker v. Selden*,
101 U.S. 99 (1879) ..................... 2

*Bikram's Yoga Coll. Of India, L.P. v. Evolation Yoga, LLC*,
803 F.3d 1032 (9th Cir. 2015) ..................... Passim

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ..................... 1, 7, 8, 9

*Corbello v. DeVito*,
262 F. Supp. 3d 1056 (D. Nev. 2017),
*appeal docketed*, No. 17-16337 (9th Cir. June 29, 2017) ..................... 6

*Field v. Google Inc.*,
412 F. Supp. 2d 1106 (D. Nev. 2006) ..................... 7

*Fisher v. Dees*,
794 F.2d 432 (9th Cir. 1986) ..................... 7

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
49 F.3d 807 (1st Cir. 1995), *aff'd by an equally divided court*,
516 U.S. 233 (1996) ..................... 1, 4

*Oracle Am., Inc. v. Google, Inc.*,
750 F.3d 1339 (2014) ("**Oracle I**") ..................... 3, 5, 6

*Oracle Am. Inc. v. Google LLC*,
886 F.3d 1179 (2018) ("**Oracle II**") ..................... 4, 6, 7

*Oracle Am., Inc. v. Google Inc.* (3:10-cv-03561),
2016 WL 3181206 (June 8, 2016) ("**JMOL Order**") ..................... Passim

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) .................... Passim

*Sony Computer Entm't v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000) .................... 1, 4, 5

*Twentieth Century Music Corp. v. Aiken*,
422 U.S. 151 (1975).................... 9

## RULES & STATUTES

17 U.S.C. § 102(b) .................... 2, 4, 5

17 U.S.C. § 504(c)(2).................... 7

Fed. R. App. P. 29(c)(5).................... 1

U.S. Const. art. I, § 8, cl. 8.................... 8

## OTHER AUTHORITIES

American Committee for Interoperable Systems, Statement of Principles,
https://www.ccianet.org/wp-content/uploads/2014/10/ACIS-Letter-to-Clinton-Admin-1992.pdf .................... 8

Brief of Defendant-Appellee, *Oracle America, Inc. v. Google LLC* (17-1118),
2017 WL 2305681 (May 22, 2017) ("**Google Brief**") .................... 9, 10

David Nimmer, *Juries and the Development of Fair Use Standards*,
31 Harv. J.L. & Tech. 563 (2018) .................... 6

Joseph Gratz & Mark A. Lemley, *Platforms and Interoperability in* Oracle v. Google, 31 Harv. J.L. & Tech. 603 (2018) .................... 3

*Number of Android Applications*, AppBrain (June 11, 2018)
http://www.appbrain.com/stats/number-of-android-apps. .................... 10

Paul Goldstein, *Goldstein on Copyright* § 12.2.2 (3d ed. 2014 & Supp. 2017)....... 7

Peter Menell, *Rise of the API Copyright Dead? An Updated Epitaph for Copyright Protection of Network and Functional Features of Computer Software*, 31 Harv. J.L. & Tech. 305 (2018) ........................................................................ 3

Wendy J. Gordon, *How* Oracle *Erred: The Use/Explanation Distinction and the Future of Computer Copyright* in COPYRIGHT LAW IN AN AGE OF LIMITATIONS AND EXCEPTIONS (Ruth Okediji, ed. 2017) ............................................................ 3

William F. Patry, *Patry on Copyright* § 10:160 (2018)............................................ 7

## STATEMENT OF INTEREST[1]

*Amici curiae* are professors who teach and write about copyright law at accredited law schools and have authored dozens of articles on software copyright protections. One of us is the co-author of the *Software & Internet Law* (4th Ed.) casebook. *Amici* respectfully submit this brief to express our concerns regarding the court's interpretations of sound principles of copyright law. We represent no institution, group, or association and we have no personal interest in the outcome of this case. We believe that the panel's decisions are contrary to at least the following precedents: *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994); *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032 (9th Cir. 2015); *Sony Computer Entm't v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995), *aff'd by an equally divided court*, 516 U.S. 233 (1996); and *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992). We further believe the outcome of this case will have a significant impact on software copyright law, fair use, and on the balance between copyright owners' legitimate interests in protecting their rights and the interests of second-

[1] Pursuant to Fed. R. App. P. 29(c)(5), *amici* hereby state that: none of the parties to this case, nor their counsel, authored any part of this brief; no party, nor any party's counsel, contributed money to fund preparing or submitting this brief; and no one else other than *amici* and their counsel contributed money to fund preparing or submitting this brief.

comers and the public in being able to build on earlier innovations through fair use. Therefore, we urge this Court to rehear this case *en banc*.

## SUMMARY OF ARGUMENT

In overturning the jury's fair use decision, the panel erred in at least four important respects. First, the panel failed to revisit its prior decision which is plainly inconsistent with recent as well as longstanding Ninth Circuit precedents regarding the scope of copyright protection afforded under 17 U.S.C. § 102(b). Second, the panel's decision threatens the viability of fair use defenses in virtually all software copyright cases. Third, the panel failed to defer to fact-finding implicit in the jury's verdict. Finally, the panel refused to consider evidence of good faith and public benefits in its fair use analysis, contrary to Supreme Court and Ninth Circuit precedent. For these reasons, this Court should grant Google's petition for rehearing *en banc*.

## ARGUMENT

### I. The panel's *Oracle I* decision on Google's § 102(b) defense is even more inconsistent with Ninth Court precedents now than it was when issued in 2014.

Copyright protection does not extend to any procedure, process, system, or method of operation, no matter how creative these functional aspects of protected works may be. *See* 17 U.S.C. § 102(b); *Baker v. Selden*, 101 U.S. 99, 104–05 (1879). The most recent Ninth Circuit decision interpreting §102(b) exclusions is *Bikram's*

*Yoga*, in which the court rejected Bikram's argument that a sequence of yoga postures, chosen from "hundreds of postures" and "countless arrangements," was copyrightable. 803 F.3d at 1042. The court observed that "the possibility of attaining a particular end through multiple different methods" does not change the fact that a process is ineligible for copyright protection, even if it is one of many processes "capable of attaining similar results." *Id.*

In its prior decision, the Oracle panel misapplied this settled rule, holding that because the declaring code "could have been written and organized in any number of ways" § 102(b) did not bar copyright protection "just because [the declaring code] also perform[s] functions." *Oracle Am., Inc. v. Google, Inc.*, 750 F.3d 1339, 1368 (2014) ("**Oracle I**").[2] The panel also disregarded the district court's factual finding that the Java API's declaring code and its sequence, structure, and organization (SSO) were a "command structure," a type of system or method of operation. *Id.* at 1353–54. The *Oracle I* panel also misread the most relevant Ninth Circuit decisions which held that the functional aspects of computer programs, such as their internal

[2] Amici are far from the only scholars who have strongly criticized the panel's first decision. *See, e.g.*, Wendy J. Gordon, *How* Oracle *Erred: The Use/Explanation Distinction and the Future of Computer Copyright* in COPYRIGHT LAW IN AN AGE OF LIMITATIONS AND EXCEPTIONS (Ruth Okediji, ed. 2017); Joseph Gratz & Mark A. Lemley, *Platforms and Interoperability in* Oracle v. Google, 31 Harv. J.L. & Tech 603 (2018); Peter Menell, *Rise of the API Copyright Dead? An Updated Epitaph for Copyright Protection of Network and Functional Features of Computer Software*, 31 Harv. J.L. & Tech. 305 (2018).

interfaces, were unprotectable procedures under § 102(b). *See Connectix*, 203 F.3d at 599, 603; *Accolade*, 977 F.2d at 1522; *see also Borland*, 49 F.3d at 819 (program command hierarchy held unprotectable as method of operation); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (program processes unprotectable by copyright law).

The *Oracle I* panel's conclusion was doctrinally incorrect at the time under *Accolade* and *Connectix*, and this conclusion is even more incorrect now following *Bikram's Yoga*. *See* 803 F.3d at 1043. Through Google's cross-appeal, the panel had the opportunity to correct this misreading of Ninth Circuit precedent, but it erroneously chose not to. *See Oracle Am. Inc. v. Google LLC*, 886 F.3d 1179, 1210–11 (2018) ("**Oracle II**").

## II. Having knocked out § 102(b) defenses for reuse of APIs in *Oracle I*, the panel's fair use decision now severely undercuts fair use defenses, contrary to Ninth Circuit precedent.

In *Oracle II*, the panel gave such a narrow interpretation to fair use as to threaten the viability of fair use defenses in virtually all software copyright cases. As the panel notes, the purpose of an API is to create a standardized set of short words and phrases that a programmer can copy (and must copy *exactly*) to activate pre-written functions and methods. *See Oracle II*, 886 F.3d at 1186–87; *see also* Order Denying Rule 50 Motions, *Oracle America, Inc. v. Google Inc.* (3:10-cv-

03561), 2016 WL 3181206 at *3–6 (June 8, 2016) (“**JMOL Order**”). Google did exactly that: it copied declarations from the Java API to create a new open-source, full-stack platform where none existed before. *See JMOL Order*, 2016 WL 3181206 at *7, *11. Under previous precedents and decades-long software industry custom, this was a quintessential non-infringing use.[3] *See id*. at *11. If, as the panel decided, no reasonable jury could ever conclude that this type of use of an API is permissible under copyright law, then it is difficult to imagine that *any* reuse of APIs or other functional elements of computer software could ever qualify as fair use. Furthermore, after having undercut § 102(b) and merger defenses in cases involving program interfaces in *Oracle I*, the panel has now interpreted fair use so narrowly that virtually no copyright defenses may apply to reuses of APIs or other functional designs. This result is contrary to well-established precedents. *See Bikram's Yoga*, 803 F.3d at 1043; *Connectix*, 203 F.3d at 605; *Accolade,* 977 F.2d at 1524–27.

## III. The panel did not defer to fact finding implicit in the jury's verdict.

Following a hung jury in the first full trial, the panel declined to resolve the fair use issue in Oracle's favor out of “due respect for the limit of our appellate function.” *Oracle I*, 750 F.3d at 1376. Specifically, the panel found that there were

[3] The Ninth Circuit characterized Connectix's reuse of the Sony API as “modestly transformative” because it enabled the development of “a wholly new product.” *Connectix*, 203 F.3d at 601–02, 606–07.

material facts in dispute concerning whether Google's use was transformative and it was "unable to resolve this issue on appeal." *Id.* But in its second opinion, the panel decided that it was not so constrained and overturned the jury's finding of fair use. *See Oracle II*, 886 F.3d at 1211. This decision was extraordinary: never had an appellate court overturned a jury's fair use determination. *See* David Nimmer, *Juries and the Development of Fair Use Standards*, 31 Harv. J.L. & Tech. 563, 576 (2018).[4] This decision was even more unexpected given that the panel acknowledged it must "presume that the jury resolved the underlying factual disputes in favor of the verdict and leave those presumed findings undisturbed if they are supported by substantial evidence." *Oracle II*, 886 F.3d at 1195 n.4.

Here, the jury was presented with "substantial evidence" that could reasonably have led it to find Google's use of the Java API to have been fair. *See Oracle II*, 886 F.3d at 1189, 1194; *see also JMOL Order*, 2016 WL 3181206 at *6–11 (detailing facts that informed the jury's fair use determination). As such, the panel should have maintained its "due respect" for the limits of its appellate function and left the jury's fair use finding undisturbed. *See* 4 William F. Patry, *Patry on Copyright* § 10:160 (2018) (fair use determinations by juries must be reviewed deferentially).

---

[4] In only one other case has a court overturned a jury verdict of fair use, and that decision is currently on appeal. *See Corbello v. DeVito*, 262 F. Supp. 3d 1056 (D. Nev. 2017), *appeal docketed*, No. 17-16337 (9th Cir. June 29, 2017).

## IV. The panel's refusal to consider evidence of good faith and public benefits was contrary to Supreme Court and Ninth Circuit precedents.

### A. Evidence of a defendant's good faith is relevant to fair use analysis.

Contrary to the panel's assertion (*see Oracle II*, 886 F.3d at 1203), the Supreme Court in *Campbell* did not hold that *only* evidence of bad faith—and not of good faith—may be considered in fair use cases. *See Campbell*, 510 U.S. at 585 n.18 (Campbell's request for a license may have been evidence of good faith); *see also Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986) (characterizing defendant's request for permission as a "modest show of consideration" that the court refused to discourage); 2 Paul Goldstein, *Goldstein on Copyright*, § 12.2.2 at 12:44.5 (3d ed. 2014 & Supp. 2017) (both bad and good faith may be relevant to fair use). Similarly, the Copyright Act itself provides that a good-faith belief in the fairness of a use may justify a reduction of statutory damages "in any case" involving certain nonprofit actors who reasonably believed their public-benefiting uses were fair. *See* 17 U.S.C. § 504(c)(2). In the Ninth Circuit, one court has explicitly stated that a party's good faith can weigh in favor of fair use. *See Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1122–23 (D. Nev. 2006) (viewing Google's compliance with industry-standard protocols regarding its cached links to web pages as an indication of good faith).

Here, the jury could have reasonably concluded that Google held a good-faith belief that its use of the Java API was fair. Witnesses testified that it was commonly understood in the software industry that an APIs' declaring code and its SSO were

"free to use and re-implement." *JMOL Order*, 2016 WL 3181206 at *7. Indeed, Sun Microsystems's last CEO testified in support of Google's fair use defense. *See id*. Moreover, Sun actively promoted re-implementation of the Java API, as this enhanced the popularity of the Java programming language. *See id*.

Google could also have relied upon the public positions that Sun and Oracle, as members of ACIS, took against copyright protection for computer program APIs. *See, e.g.*, American Committee for Interoperable Systems (ACIS), Statement of Principles, appended to Letter from Peter M.C. Choy on behalf of ACIS to Barry E. Carter (Nov. 5, 1992), *available at* https://www.ccianet.org/wp-content/uploads/2014/10/ACIS-Letter-to-Clinton-Admin-1992.pdf ("interfaces and access protocols are not protectable expression under copyright law."). All this good-faith evidence should have been considered by the panel. *See Campbell*, 510 U.S. at 585 n.18.

### B. Google's reimplementation of the Java API enabled research and innovation.

The Supreme Court has directed courts to consider public benefits that flow from a challenged use in fair use analysis. *See Campbell*, 510 U.S. at 574–76. This is in keeping with the overriding constitutional purpose of copyright: to "promote the Progress of Science and Useful Arts" to benefit the public. *Id*. at 575 (quoting U.S. Const. art. I, § 8, cl. 8). When assessing fair use, courts should consider the

public benefits that may have accrued from the use. *See id*. at 574–75; *see also Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975) (the ultimate aim of copyright is "to stimulate artistic creativity for the general public good."). Moreover, courts are "free to consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially." *Accolade*, 977 F.2d at 1523. Such public benefits "need not be direct or tangible, but may arise because the challenged use serves a public interest." *Id*.

As the jury heard, prior to the development of Android, there was "no open-source, full-stack platform" that could manage the constraints of smartphones[5] and "few were innovating in the mobile phone space." Brief of Defendant-Appellee, *Oracle America, Inc. v. Google LLC* (17-1118), 2017 WL 2305681 at *12 (May 22, 2017) ("**Google Brief**"). Google invested three years in developing Android, which resulted in a "'revolutionary,' open-source mobile platform, 'completely different from any other approach.'" *Id*. at *16. Upon its completion, Google gave away Android free of charge to smartphone manufacturers[6] and published the source code for

---

[5] Sun/Oracle's only foray into mobile computing was Java Micro Edition, which "was intended for resource-constrained devices much smaller and much simpler than a modern smartphone." *Google Brief*, 2017 WL 2305681 at *14.

[6] The fact that Android was made available for free under an open source license may also have factored into the jury's fair use finding regarding commerciality (factor one) and market harm (factor four). *See JMOL Order*, 2016 WL 3181206 at *7, *10.

use under an open source license. *Id.* at *17. This approach greatly benefited application developers, who did not have to learn a new dialect of Java to use Android and could readily do so for free. *Id*. For this reason, Sun's CEO Jonathan Schwartz heralded Android as "having strapped another set of rockets to the Java community's momentum" (*id*. at *18), a statement which proved prophetic: as of June 11, 2018, over 3.5 million software applications have been developed using Android. *See, e.g.*, *Number of Android Applications*, AppBrain (June 11, 2018), https://www.appbrain.com/stats/number-of-android-apps. As such, Google's transformative use of the Java API in the development of Android provided substantial benefits to the software community and to the public overall.

Based on this record, the jury could have reasonably found that Google's use of the Java API served the public interest and that this supported its fair use finding.

## CONCLUSION

For the reasons stated above, we urge the Court to grant Google's petition for rehearing *en banc*.

Dated: June 12, 2018

Respectfully submitted:

/s/ Robert K. Walker

Robert K. Walker
Catherine Crump
Samuelson Law Technology &
Public Policy Clinic
University of California, Berkeley,
School of Law
334 Boalt Hall, North Addition
Berkeley, CA 94720
(510) 664-4875
*Counsel of Record for Amici Curiae Pamela Samuelson & Clark Asay, Copyright Professors*

CERTIFICATE OF FILING AND SERVICE

I, Robyn Cocho, hereby certify that, on June 12, 2018 the foregoing Brief was filed through the NextGen system and served electronically on all individuals registered on the courts NextGen system.

The required paper copies will be sent to the court on the same date as above.

/s/Robyn Cocho
Robyn Cocho

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e)

__x__ The brief contains __2,479__ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

____ The brief uses a monospaced typeface and contains ______ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6)

__x__ The brief has been prepared in a proportionally spaced typeface using times new roman in a 14 point font or

____ The brief has been prepared in a monospaced typeface using ___ ____________in a ___ characters per inch_________ font.

Respectfully submitted,

/s/ Robert K. Walker

Robert K. Walker
Catherine Crump
Samuelson Law Technology &
Public Policy Clinic
University of California, Berkeley,
School of Law
334 Boalt Hall, North Addition
Berkeley, California 94720
(510) 664-4875
*Counsel of Record for Amici Curiae*
*Pamela Samuelson & Clark Asay,*
*Copyright Professors*