Nos. 17-1118, -1202

IN THE

# United States Court of Appeals for the Federal Circuit

ORACLE AMERICA, INC.,

*Plaintiff-Appellant*,

v.

GOOGLE LLC,

*Defendant-Cross-Appellant*.

On Appeal from the United States District Court for the Northern District of California, Case No. 3:10-cv-03561-WHA, Hon. William H. Alsup

**BRIEF FOR *AMICI CURIAE* PUBLIC KNOWLEDGE AND THE R STREET INSTITUTE IN SUPPORT OF DEFENDANT-CROSS-APPELLANT'S PETITION FOR REHEARING EN BANC**

Meredith Rose
PUBLIC KNOWLEDGE
1818 N St. NW Suite 410
Washington, DC 20036
(202) 861-0020
mrose@publicknowledge.org
*Counsel for Amici Curiae*

June 12, 2018

## CERTIFICATE OF INTEREST

Pursuant to Rules 29(a) and 47.4 of the Federal Circuit Rules of Practice, counsel of record certifies as follows:

(1) The full name of every party or amicus represented by counsel to this brief is **Public Knowledge** and **The R Street Institute**.

(2) The above-identified parties are the real parties in interest.

(3) The corporate disclosure statement of Rule 26.1 of the Federal Rules of Appellate Procedure is as follows: There is no parent corporation to or any corporation that owns 10% or more of stock in the above-identified parties.

(4) The names of all law firms and the partners and associates that have appeared for the party in the lower tribunal or are expected to appear for the party in this court are: **Meredith Rose, Public Knowledge.**

(5) No cases are known to counsel to be pending in this or any other court or agency that may directly affect or be directly affected by this appeal.

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... ii

TABLE OF CONTENTS .......... iii

TABLE OF AUTHORITIES .......... iv

INTEREST OF AMICI CURIAE .......... 1

SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 5

I. The application of copyright to technical standards such as APIs is not consistent with industry expectations. .......... 5

II. Oracle is fundamentally asking for the ability to copyright an uncopyrightable language .......... 8

CONCLUSION .......... 13

CERTIFICATE OF COMPLIANCE .......... 14

CERTIFICATE OF SERVICE .......... 15

# TABLE OF AUTHORITIES

## Other Authorities

Brief of *Amicus Curiae* Language Creation Society, *Paramount Pictures Corp. v. Axanar Prods., Inc.*, No. 2:15-cv-9938 (C.D. Cal. May 9, 2016). ........ 11

Brief of Public Knowledge as *Amicus Curiae*, *Cisco Sys., Inc. v. Arista Networks, Inc.*, No. 17-2145 (Fed. Cir. Dec. 23, 2017) ........ 5, 6, 7

Charles Duan, *Can Copyright Protect a Language? What a Big Software Case Could Mean for Klingon Speakers*, Slate: Future Tense (June 3, 2015), http:// www. slate. com/ articles/ technology/ future_ tense/ 2015/ 06/ oracle_ v_ google_ klingon_ and_ copyrighting_ language. html ........ 8

RUDI BEKKERS & ANDREW UPDEGROVE, A STUDY OF IPR POLICIES AND PRACTICES OF A REPRESENTATIVE GROUP OF STANDARDS SETTING ORGANIZATIONS WORLDWIDE (Sept. 17, 2012) (commissioned paper preparatory to NAT'L ACAD. OF SCIS., PATENT CHALLENGES FOR STANDARD-SETTING IN THE GLOBAL ECONOMY (Keith Maskus & Stephen A. Merrill eds., 2013)) ........ 7

Stina Sieg, *Esperanto Is Not Dead: Can the Universal Language Make a Comeback?*, NAT'L PUB. RADIO (June 13, 2015), https://www.npr.org/sections/goatsandsoda/2015/06/13/413968033/esperanto-is-not-dead-can-the-universal-language-make-a-comeback.... 11

Webster's New International Dictionary of the English Language (W.T. Harris & F. Sturges Allen eds., 1930), https://catalog.hathitrust.org/Record/100913326 ........ 9

## INTEREST OF AMICI CURIAE

Public Knowledge[1] is a non-profit organization that is dedicated to preserving the openness of the Internet and the public's access to knowledge, promoting creativity through balanced intellectual property rights, and upholding and protecting the rights of consumers to use innovative technology lawfully. Public Knowledge advocates on behalf of the public interest for balanced patent and copyright systems, particularly with respect to new and emerging technologies.

The R Street Institute is a non-profit, non-partisan public-policy research organization. R Street's mission is to engage in policy research and educational outreach that promotes free markets, as well as limited yet effective government, including properly calibrated legal and regulatory frameworks that support economic growth and individual liberty.

[1] Pursuant to Federal Rule of Appellate Procedure 29(a), all parties received appropriate notice of and consented to the filing of this brief. Pursuant to Rule 29(c)(5), no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of the brief. No person or entity, other than amici, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

The panel held, despite a jury verdict to the contrary, that Google infringed copyright by reusing Oracle's Java function names and structures to make a compatible software environment, and that such reuse was not fair use. This decision was not only wrong, but more importantly, will have a widespread, deleterious impact on diverse industries and policy interests. As such, Google's request for *en banc* rehearing should be granted.

1. The panel's decision that application programming interfaces are copyrightable subject matter—and that implementing these interfaces constitutes infringement—will potentially affect large swaths of the technology and software industries. Modern information technology relies overwhelmingly on technical standards, which almost universally set forth application programming interfaces akin to Oracle's. Many if not all of those technical standards—governing the functionality of everything from web pages to computer peripherals to television broadcasts—are now at risk of unpredictable copyright litigation based on the panel decision. Numerous parties, and this Court

on multiple occasions, have recognized and sought to limit the parallel problem of patent assertion against standards users.

2. Although the panel believed that its decision in this case would only affect computer software, the result could reach much farther. Human languages and application programming interfaces share fundamental characteristics at issue in the panel's decision. Both involve a vocabulary of words with semantic meanings, and a syntax specifying how those words are ordered and used to relate to each other. In holding that Google's implementation of Oracle's command word language constituted copyright infringement and not fair use, the panel went far beyond merely rendering a decision on computer software; it opened the door to the remarkable possibility that copyright infringement could inhere in everyday uses of language.

A case of such far-reaching proportions—touching on both standardization basis of all modern information technology and deep philosophical questions of ownership of language—deserves cautious consideration and review, especially when the result is a statement of positive copyright law that discards the result of a full trial and jury

verdict, as the panel did here. Because of this, *en banc* rehearing should be granted.

## ARGUMENT

### I. The application of copyright to technical standards such as APIs is not consistent with industry expectations.

The irreconcilable tension between the present case and modern technical standards demonstrates the panel decision's potentially widespread impact on information technology industries. This argument was previously presented in briefing for another case pending before this Court,[2] and the text below summarizes that argument.

Technical standards, which define the modes of communication for computers and other information technology systems, contain application programming interfaces that are indistinguishable from those at issue in this case. As an example, the standard for layout of web pages, called CSS, contains specific words that must be used, arranged in often-crosslinked hierarchies, just as in the Java API. If infringement lies against Google's implementation of the Java API, then it is difficult to see why infringement would not also lie against a web browser that implements the CSS standard, a computer that

[2] *See* Brief of Public Knowledge as *Amicus Curiae*, *Cisco Sys., Inc. v. Arista Networks, Inc.*, No. 17-2145 (Fed. Cir. Dec. 23, 2017) [hereinafter Cisco Brief].

implements USB-standard peripherals, a television that receives ASTC-standard broadcasts, or any number of other implementers of technical standards.[3]

Moreover, ample evidence shows that technologists and standard-setting bodies do not believe that implementers of standards currently infringe copyright. Patents, which technologists affirmatively know to affect implementers of technical standards, are governed by complex, lengthy contribution and licensing policies that dictate the terms under which patentable software is contributed to a project, how it can be used, and the terms of licensing to potential end-users of the standard.[4]

Were interoperability standards to raise serious and well-recognized copyright concerns, one would expect to see corollary copyright policies designed to protect the innovations by and contributions from the bodies' members. However, "the issue of what might be referred to as 'essential copyrights' is rarely dealt in an effective way in IPR policies."[5] A review of prominent standards bodies

---

[3] *See id.* at 5–15.
[4] *See id.* at 22–25.
[5] RUDI BEKKERS & ANDREW UPDEGROVE, A STUDY OF IPR POLICIES AND PRACTICES OF A REPRESENTATIVE GROUP OF STANDARDS SETTING ORGANIZATIONS WORLDWIDE (Sept. 17, 2012) (commissioned paper

finds that almost none have established a copyright policy dealing with implementers.[6] The absence of copyright provisions from the far-reaching and legally complex conversations around standards development reveals a fundamental industry expectation: copyright simply does not have a role to play in technical standards. The panel's decision to the contrary thus upsets industry expectations, and more importantly puts standard-setting bodies in the awkward position of having to now deal with retrospective copyright problems that they previously did not have.

This Court, *en banc*, needs to grapple with this seismic impact that the panel decision could have on industry. Intellectual property law has always depended on a delicate balance between holders of rights to technology and the industries who uses technology for downstream innovation and commercialization. Preserving industry expectations has always been a part of that balance.[7] Asserting that copyright protection should be granted on Java's API while also strictly

---

preparatory to NAT'L ACAD. OF SCIS., PATENT CHALLENGES FOR STANDARD-SETTING IN THE GLOBAL ECONOMY (Keith Maskus & Stephen A. Merrill eds., 2013)) at 36.

[6] *See* Cisco Brief at 25–32.

[7] *See* id. at 32–35.

limiting the scope of fair use in this case is not consistent with the purpose of copyright protection *or* the expectations of the industry.

## II. Oracle is fundamentally asking for the ability to copyright an uncopyrightable language

Despite making no acknowledgment of this remarkable fact, the panel decision also implicates a fundamental and difficult question of whether a language may be owned through copyright.[8] This additional dimension further underscores the importance of this case and the need for *en banc* review.

An application programming interface is a method of configuring an operator's request into a form that is understandable to the receiving computer, device, or program. The designer of an API, as the panel observed, makes certain choices: to use one word for a command rather than another, or to put words in a certain order. Various factors go into those choices, such as industry expectations, ease of use, brevity, and consistency—choices which are generally directed toward making the

---

[8] An earlier and expanded version of this argument is presented in Charles Duan, *Can Copyright Protect a Language? What a Big Software Case Could Mean for Klingon Speakers*, Slate: Future Tense (June 3, 2015), http://www.slate.com/articles/technology/future_tense/2015/06/oracle_v_google_klingon_and_copyrighting_language.html.

API functionally usable. The panel held that these choices constituted expressive creativity warranting copyright protection, and that copying them for the purpose of implementing a compatible system was not fair use.

But these choices in API design are not creative expression, and the panel erred in holding otherwise. In traditional creative endeavors (such as word choice in novels), second comers are free to choose alternate expression to produce their own works; with APIs, second comers do not enjoy that freedom. This is because an API is not a novel or play; an API is a language.

A language is a set of rules and structures that enables two parties to communicate, and it is defined by two components: a vocabulary of words attached to semantic meanings, and a syntax or grammar that defines how words fit together to relate to each other.[9] A computer API fits that definition precisely, and indeed many of Oracle's arguments about the supposedly creative aspects of its API, such as the

---

[9] *See* Webster's New International Dictionary of the English Language 1211 (W.T. Harris & F. Sturges Allen eds., 1930) (defining language as a "body of words and method of combining words," specifically "words themselves in their grammatical relationships"), https://catalog.hathitrust.org/Record/100913326.

interrelation of commands (words) among hierarchies (grammar rules), highlight that the discussion about software APIs is, in fact, a more general discussion about language.

A key insight about language is that all speakers and listeners must use the same vocabulary and grammar, lest they be misunderstood. Say that I want to ask my toddler to hand me her toys. In English, I would use the phrase, "bring me the toys." In Japanese, the same sentiment would be "*atashi-ni omocha-o mottekinasai*" (literally, "me-toward, toys-regarding bring"), different both in vocabulary and in grammar. To deviate in either vocabulary ("bring me the tops") or grammar ("me toys the bring") would not simply be a creative choice—it would render my sentence incomprehensible at best or wrong at worst.

In holding that it was not fair use for Google to implement Oracle's vocabulary and grammar, the panel requires Google, under penalty of copyright infringement, to create an incompatible API. Recognizing that APIs are languages demonstrates the absurdity of that result: I could theoretically construct my own grammar and

vocabulary of sounds, grunts and raspberry-blows, but no child, even my own, would know what I wanted.

Of course as a practical matter it is implausible for anyone to claim copyright in English or Japanese, but constructed languages do exist. There are numerous examples, such as Esperanto, Klingon, or Sindarin of the Grey-elves. These languages have native or near-native speakers. The Klingon Language Institute publishes academic journals, administers certification tests, and conducts plays in the Klingon language;[10] meanwhile, NPR estimates that there are around 1,000 *denaskaj esperantistoj*, or native Esperanto speakers, globally.[11]

To the extent that the panel held it infringing as a matter of law for Google to write a computer program that understood the Java API, the panel potentially also held it infringing as a matter of law to speak

---

[10] Paramount notably attempted to claim copyright in Klingon in a federal lawsuit against producers of the fan film *Return to Axanar*. The claim raised a war cry and prompted a bilingual English/Klingon brief from the Language Creation Society. *See* Brief of *Amicus Curiae* Language Creation Society, *Paramount Pictures Corp. v. Axanar Prods., Inc.*, No. 2:15-cv-9938 (C.D. Cal. May 9, 2016).

[11] Stina Sieg, *Esperanto Is Not Dead: Can the Universal Language Make a Comeback?*, NAT'L PUB. RADIO (June 13, 2015), https://www.npr.org/sections/goatsandsoda/2015/06/13/413968033/esperanto-is-not-dead-can-the-universal-language-make-a-comeback.

and understand a constructed language. More concerningly, it suggests that the creator of a language, dialect, argot, or vocabulary could use copyright licensing to control access to information or communication. That is a result with widespread public policy implications, including potential harms to access to knowledge, freedom of expression, and open flows of information—none of which the panel addressed.

The panel did not address this Tower-of-Babel situation it potentially created, owing to its narrow focus on what it assumed to be a particularized and unusual case. That assumption was wrong: this case has broad implications both for information technology industries and for fundamental considerations of philosophy and linguistics. The Court should weigh these ramifications *en banc*.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendant-Cross-Appellant Google's petition for rehearing *en banc*.

Respectfully submitted,

Dated: June 12, 2018

/s/ Meredith Rose

Meredith Rose
1818 N Street NW, Suite 410
Washington, DC 20036
(202) 861-0020
mrose@publicknowledge.org
Counsel for amici curiae

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of the Federal Rules of Appellate Procedure and the Circuit Rules. The document contains 2,053 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface and type style requirements of the Federal Rules. The document has been prepared in a proportionally spaced typeface using Microsoft Word, in the font Century Schoolbook.

Dated: June 12, 2018

/s/ Meredith Rose
Meredith Rose
Counsel for amici curiae

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2018, I caused the foregoing Brief of Public Knowledge and R Street Institute as Amici Curiae in Support of Defendant-Cross-Appellant to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all counsel of record.

Dated: June 12, 2018

/s/ Meredith Rose
Meredith Rose
Counsel for amici curiae